71 A.3d 193

Larry FINCH, et al.

v.

LVNV FUNDING LLC.

No. 704, Sept. Term, 2012.

Court of Special Appeals of Maryland.

June 28, 2013.

Reconsideration Denied Sept. 3, 2013.

**750**

Phillip Robinson (Scott Borison, Legg Law Firm, LLC, on the brief), Frederick, MD, for Appellant.

Ronald S. Canter, Rockville, MD, for Appellee.

Panel: WOODWARD, BERGER, ARRIE W. DAVIS (Retired, Specially Assigned), JJ.

BERGER, J.

This case arises out of an action filed in the Circuit Court for Baltimore City by co-appellants Larry Finch ("Finch") and Kurt A. Dorsey ("Dorsey") (collectively, "appellants"), against appellee, LVNV Funding, LLC ("LVNV"). In 2008, LVNV filed debt collection suits against Finch and Dorsey in the District Court for Baltimore City. Default judgments were entered against each appellant. Appellants thereafter filed a class action in the circuit court, alleging that LVNV was not licensed as a collection agency, as required by Maryland law, when it obtained the underlying district court judgments. Appellants sought to represent a class comprised of all persons against whom LVNV had obtained a judgment for an alleged debt in Maryland state courts during the period of time in which LVNV was unlicensed. The class action complaint asserted five claims. Appellants sought declaratory and injunctive relief, damages for unjust enrichment, and damages for alleged violations of the Maryland Consumer Debt Collection Practices Act and the Maryland Consumer Protection Act. The circuit court dismissed appellants' complaint on the

basis that it constituted an impermissible collateral attack on the district court judgments. This appeal followed.

Appellants present three questions for review, which we have combined and rephrased as follows:

1. Whether the judgments entered in favor of LVNV in the district court are void because LVNV was not licensed as a collection agency when it filed the actions as required under Maryland law.

2. Whether a party may collaterally attack a judgment entered in favor of an unlicensed collection agency.

For the reasons set forth below, we reverse the decision of the Circuit Court for Baltimore City.

## FACTUAL AND PROCEDURAL BACKGROUND

Finch and Dorsey are consumers who accumulated credit card debts. LVNV acquired appellants' unpaid debts by assignment. In 2008, LVNV filed collection suits against Finch and Dorsey in the District Court of Maryland for Baltimore City. Both Finch and Dorsey were served, and neither contested LVNV's claims. The district court entered a default judgment against Finch on July 31, 2009 in the amount of $3,621.67. In 2011, LVNV obtained a writ of garnishment against Finch's earnings. The district court also entered a default judgment against Dorsey on April 8, 2009 in the amount of $5,838.95.

Appellants filed a putative class action in the circuit court on November 11, 2009. Appellants sought to represent a class comprised of:

Those persons sued by LVNV in Maryland state courts from October 30, 2007 through February 17, 2010 against whom LVNV obtained a judgment for an alleged debt, interest or costs, including attorneys fees in its favor in an attempt to collect a consumer debt.

In their complaint, appellants alleged that LVNV engaged in illegal collection of debts because LVNV was not licensed as a collection agency in Maryland, as required by the Maryland

Collection Agency Licensing Act ("MCALA"), Md.Code Ann., Bus. Reg. § 7–301. The complaint further alleged that LVNV's unlicensed collection activities violated the Maryland Consumer Debt Collection Act ("MCDCA"), Md.Code Ann., Com. Law §§ 14–201 to 14–204, and the Maryland Consumer Protection Act ("MCPA"), Md.Code Ann., Com. Law § 13–301. Finally, the complaint alleged that the judgments against Finch and Dorsey were obtained based upon affidavits that were irregular in certain respects.

The appellants' complaint asserted five causes of action. In the first three counts, appellants sought a declaratory judgment and injunctive relief, both individually and as a class, based on LVNV's unlawful activities as an unlicensed collection agency. In Count IV, appellants alleged unjust enrichment and sought to recover from LVNV "all judgment sums, costs, and pre- and post-judgment interest it has collected. . . ." In Count V, appellants asserted individual and class claims for damages under the MCDCA and the MCPA.

LVNV filed a motion to dismiss appellants' circuit court complaint on the basis that it constituted an impermissible collateral attack on the existing district court judgments. After holding a hearing, the circuit court dismissed appellants' complaint, explaining that "[a]ll of [appellants]' claims are barred as an impermissible attempt to mount a collateral attack on the judgments entered by the District Court of Maryland for Baltimore City." The circuit court elaborated that "if [appellants] wish to try to reopen those cases . . . they must do so in the District Court, the only court that even possibly has revisory power over those judgments." Appellants moved to alter, amend, or revise the order of dismissal. The circuit court denied the motion. This timely appeal followed.

## STANDARD OF REVIEW

The standard of review of a grant of a motion to dismiss is *de novo. Reichs Ford Road Joint Venture v. State Roads Com'n of the State Highway Admin.,* 388 Md. 500, 509, 880 A.2d 307 (2005). The Court of Appeals has explained:

On appeal from a dismissal for failure to state a claim [the Court] must assume the truth of, and view in a light most favorable to the non-moving party, all well-pleaded facts and allegations contained in the complaint, as well as all inferences that may be reasonably drawn from them, and order of dismissal only if the allegations and permissible inferences, if true, would not afford relief to the plaintiff, *i.e.*, the allegations do not state a cause of action for which relief may be granted.

*Shailendra Kumar, P.A. v. Dhanda*, 426 Md. 185, 192, 43 A.3d 1029 (2012).

## DISCUSSION

Appellants argue that the circuit court erred by dismissing appellants' claims as an impermissible collateral attack on the district court judgments. In support, appellants contend that the district court judgments are void because LVNV was not licensed as a collection agency in Maryland when it filed the district court actions against Dorsey, Finch, and other class members. Appellants posit that the collateral attack doctrine does not apply because the district court judgments are void. LVNV asserts that the district court judgments are valid, and, therefore, the circuit court properly dismissed appellants' action as an impermissible collateral attack. We hold that judgments entered in favor of an unlicensed collection agency are void. We further hold that the collateral attack doctrine does not apply to void judgments. Accordingly, the circuit court erred by dismissing appellants' complaint.

## I. THE VALIDITY OF DISTRICT COURT JUDGMENTS

We first consider whether the district court judgments are void, as urged by appellants. It appears from the record that the circuit court did not expressly consider the validity of the judgments. Rather, the circuit court analyzed whether, among other things, the *request* for a declaration that the judgments are void constitutes an impermissible collateral attack. In our view, the requisite analysis first requires a determination as to whether the underlying judg-

ments are void, and only then can we consider the implications of the collateral attack doctrine. To be sure, "a void judgment is subject to attack either directly by appeal or collaterally.... It does not constitute *res judicata.*" *State v. Ambrose,* 191 Md. 353, 369, 62 A.2d 359 (1948).[1] *See also Green v. Ford Motor Credit Co.,* 152 Md.App. 32, 52, 828 A.2d 821 (2003) (first deciding whether district court judgments were void, and then holding that circuit court action was barred because it constituted an impermissible collateral attack on a valid district court judgment).

## A. Void Judgments

Our analysis must necessarily begin by examining the distinction between a void and voidable judgment. A void judgment "is a mere nullity, which [is] disregarded entirely, and could [be] attacked collaterally, and ... could [be] discharged by any other court of competent jurisdiction...." *Smith v. State,* 240 Md. 464, 474, 214 A.2d 563 (1965). A voidable judgment "is not a mere nullity, but only liable to be avoided by a direct attack and the taking of proper steps to have its invalidity declared. Until annulled, it has all the ordinary consequences of a legal judgment." *Id.*

Judgments are void as a matter of law in various circumstances. For example, a judgment is void if it was obtained by a "non-lawyer" through the unauthorized practice of law.[2] *Turkey Point Prop. Owners' Ass'n, Inc. v. Anderson,* 106 Md.App. 710, 666 A.2d 904 (1995). Similarly, a judgment is void in proceedings where a corporation was not represented by a lawyer.[3] *Id.* A complaint filed in the name of a corporation that has forfeited its corporate charter is a nullity. *Stein v. Smith,* 358 Md. 670, 751 A.2d 504 (2000).

---

**1.** *See infra,* Part II, for a complete discussion of the collateral attack doctrine and the implication of void judgments.

**2.** The practice of law by a nonlawyer is prohibited. Md.Code Ann., Bus. Occ. & Prof., §§ 10–206(a), 10–601(a) (West 2013).

**3.** A Maryland corporation must be represented by lawyer in civil proceedings in a circuit court. Md. Rules 1–202(q), 2–131(a)(2).

In *Turkey Point,* we held that a non-lawyer's representation of an association rendered the complaint, and the trial proceedings, a nullity. *Id.* at 718–20, 666 A.2d 904. In so holding, we adopted the rationale of other jurisdictions, which have held that:

> Proceedings in a suit by a person not entitled to practice [law] are a nullity. . . . If the cause has proceeded to judgment, the judgment is void. . . .

*Turkey Point Prop. Owners' Ass'n, Inc.,* 106 Md.App. at 718, 666 A.2d 904. We explained that this "drastic remedy" was called for by "[t]he totality of the circumstances, including the long history of rules and legislation aimed at preventing the practice of law by nonlawyers[.]" *Id.* at 719, 666 A.2d 904.

In *Stein,* the Court of Appeals held that a complaint filed in the name of a corporation that had forfeited its corporate charter was a nullity. *Stein,* 358 Md. at 675, 751 A.2d 504. The *Stein* Court explained that, "[o]ne of the powers of [the company] that became 'inoperative, null, and void' upon forfeiture of its charter was the power to sue." *Id.* at 675, 751 A.2d 504 (citing the Maryland Code provisions governing corporate charters). The Court further observed that:

> There is [ ] a strong analogy between the problem in the case before us and the purported filing of an action against a person who is deceased at that time. In *Burket v. Aldridge,* 241 Md. 423, 430, 216 A.2d 910, 913 (1966), we said that "the action filed by Burket against Smith, a few days before the expiration of the three year period from the date of the injuries, had no legal effect. Smith was dead, and an action brought against a dead man is a nullity." . . . . We perceive no reason why an action purportedly brought by a defunct corporation has any more efficacy than an action brought against a deceased individual defendant.

*Stein,* 358 Md. at 682, 751 A.2d 504.

### B. Unenforceable Judgments

■ Generally, a party that lacks a required license may not file an action in a Maryland court to enforce rights related

to its unlicensed activities. *See, e.g., Harry Berenter, Inc. v. Berman,* 258 Md. 290, 293, 265 A.2d 759 (1970). The Court of Appeals explained that:

> [I]f a statute requiring a license for conducting a trade, business or profession is regulatory in nature for the protection of the public, rather than merely to raise revenue, an unlicensed person will not be given the assistance of the courts in enforcing contracts within the provisions of the regulatory statute because such enforcement is against public policy.

*Id. See also McDaniel v. Baranowski,* 419 Md. 560, 583–87, 19 A.3d 927 (2011) (reversing summary ejectment judgment entered against a tenant and in favor of an unlicensed landlord because "the purpose of the [landlord licensing] statute was to eliminate a perceived harm, rather than to build the public fisc. . . .").[4]

In *McDaniel,* the Court of Appeals concluded that the lack of a license implicated the landlord's "status as a claimant" in Maryland courts, rather than constituting an affirmative defense.[5] *McDaniel,* 419 Md. at 587, 19 A.3d 927. The district court had awarded possession of leased premises to an unlicensed landlord, and entered a money judgment in favor of the landlord for rent and late fees. *McDaniel,* 419 Md. at 567, 19 A.3d 927. On appeal, the Court of Appeals considered the effect of the licensure requirement on the validity of the district court judgment. *Id.* at 574, 19 A.3d 927. The Court noted that the relevant statutory provision contained no explicit requirement that a landlord be licensed in order to maintain an action in court. *Id.* Accordingly, the Court ob-

---

**4.** *See also Snodgrass v. Immler,* 232 Md. 416, 194 A.2d 103 (1963) (unlicensed architect not permitted to recover architectural fees in breach of contract action because architect was not licensed as required by law); *Baltimore Street Builders v. Stewart,* 186 Md.App. 684, 975 A.2d 271 (2009) (contractor could not enforce a contract with a consumer in court because contractor was unlicensed).

**5.** We observe, however, that the procedural posture of *McDaniel* is vastly different because that case involved an appeal from the denial of a motion to revise a district court judgment.

served that, "[w]hether [ ] the landlord must establish his bona fides regarding licensure at the time of filing, as a matter of law, or whether the tenant should plead the lack of a license as an affirmative defense remains an issue." *Id.* The Court ultimately held that licensure impacted the landlord's "status as a claimant" in Maryland courts, rather than constituting an affirmative defense:

> Licensure under local ordinances in order to operate rental dwelling units is an integral part of a landlord's status as claimant in those jurisdictions that require licensure. As a result, in order to invoke the facile process of summary ejectment, a landlord in those jurisdictions requiring licensure, must affirmatively plead and demonstrate that he is licensed at the time of the filing of the complaint for summary ejectment in order to initiate the summary ejectment process.

*Id.* at 587, 19 A.3d 927.

### C. The MCALA Licensure Requirement

Maryland law requires a debt collector to obtain a license. *See* MCALA, Md.Code Ann., Bus. Reg. § 7–301(a) ("a person must have a license whenever the person does business as a collection agency in the State."). The MCALA defines a "collection agency" as a "person who engages directly or indirectly in the business of: ... (ii) collecting a consumer claim the person owns, if the claim was in default when the person acquired it." *Id.* at § 7–101(c). "[A] Consumer Debt Purchaser that collects consumer claims through civil litigation is a 'collection agency' under Maryland law and required to be licensed as such regardless of whether an attorney representing the Consumer Debt Purchaser in the litigation is a licensed collection agency." Md. State Collection Agency Licensing Bd. Advisory Notice 05–10, May 5, 2010. Acting without a license is also a misdemeanor under Maryland law. *See* MCALA § 7–401(b). LVNV concedes that it was not licensed at the time it filed actions against Dorsey and Finch. Moreover, LVNV seemingly does not dispute that it was

required to obtain a license under The MCALA prior to filing actions against Finch and Dorsey.[6]

## D. Lack of MCALA License and Validity of District Court Judgments

 It appears to be a question of first impression in Maryland whether a collection agency's failure to obtain a license, as required by the MCALA, renders any judgment entered in favor of an unlicensed collection agency void or voidable. We conclude that a judgment obtained by an unlicensed collection agency is void.

At least one other jurisdiction has considered this issue, and held that judgments entered in favor of an unlicensed debt collection agency are void. *See LVNV Funding, LLC v. Trice,* 352 Ill.Dec. 6, 952 N.E.2d 1232 (Ill.App.2011).[7] There, an intermediate appellate court in Illinois held that judgments obtained by LVNV in Illinois district courts were void because LVNV was unlicensed, as required by the Illinois Collection Agency Act, when it filed the district court actions. *Id.* In so holding, the *Trice* court rejected the trial court's conclusion that the lack of licensure "made the judgment merely voidable[.]" *Id.* at 1233. Rather, the *Trice* court held that the "legislature's criminalization of an unregistered collection agency's collection of a debt establishes an intent to void any judgment entered in favor of an unregistered collection agency." *Id.* at 1234. The *Trice* court also observed that the

---

**6.** LVNV claims in a footnote that it is a "passive" debt buyer, and that passive debt buyers were "confused about whether they were 'required to be licensed as collection agencies when they collect consumer debts through civil litigation....'" This contention has been consistently rejected. *See, e.g., Bradshaw v. Hilco Receivables, LLC,* 765 F.Supp.2d 719, 727 (D.Md.2011) (applying Maryland law) (rejecting debt buyer's argument that it was confused whether a "passive" debt buyer must be licensed as a collection agency, and explaining that "DLLR issued an advisory notice clarifying its official position" on July 17, 2007).

**7.** The *Trice* court observed that the issue was one of first impression, and framed the question as follows: "When an unregistered collection agency obtains a judgment against a debtor, does the lack of a license make the judgment void, or merely voidable?" *Id.* at 1233.

"Illinois General Assembly adopted legislation to license and regulate collection agencies ... [on the basis that] practice as a collection agency ... affect[s] the public health, safety, and welfare...." *Id.* at 1236.

In reaching its decision, the *Trice* court explained that "[w]e find this case similar to cases in which a person practices law without a license." *Id.* at 1237. Under Illinois law, "[a] complaint drafted by a nonattorney on behalf of a corporation constitutes the unauthorized practice of law rendering the pleading a nullity and any judgment entered on it void." *Id.* (citations omitted). Consequently, the *Trice* court held that "a complaint filed by an unregistered collection agency is similarly a nullity, and any judgment entered on such a complaint is void." *Id.*

Although there is no Maryland case directly on point, the United States District Court for the District of Maryland has held that filing a collection action without a license, as required under the MCALA, constitutes an attempt to "enforce a right ... that does not exist." *Hilco, supra,* 765 F.Supp.2d at 732 (applying Maryland law). Similarly, in the context of federal law, the *Hilco* court held that filing a collection action without a license under the MCALA constitutes an "action that cannot legally be taken." *Id.* at 731. In so holding, the *Hilco* court relied upon various cases from other jurisdictions holding that "violations of parallel state laws that mandate licensure by collection agencies" amounted to actions "that cannot legally be taken." *Id.* at 728 (citing *Sibley v. Firstcollect, Inc.,* 913 F.Supp. 469, 471–72 (M.D.La.1995); *Russey v. Rankin,* 911 F.Supp. 1449, 1459 (D.N.M.1995); *Kuhn v. Account Control Tech., Inc.,* 865 F.Supp. 1443, 1452 (D.Nev. 1994)).

In our view, the Maryland precedent on void judgments weighs in favor of adopting the analysis set forth in *Trice*.[8]

---

8. We observe, however, that the procedural posture of *Trice* is different. There, the defendant sought to vacate the district court judgment by filing a motion to vacate the judgment in the district court. *Id.* at 1234.

The definition of a void judgment in Maryland mirrors the definition under Illinois law. *See Smith,* 240 Md. at 474, 214 A.2d 563 (A void judgment "is a mere nullity, which [is] disregarded entirely. . . ."); *see also Trice,* 952 N.E.2d at 1237 ("A void judgment is from its inception a complete nullity and without legal effect."). A judgment is void under both Maryland law and Illinois law if the judgment was obtained by an unlicensed attorney, or by a corporation not represented by an attorney. *See Turkey Point Prop. Owners' Ass'n, Inc.,* 106 Md.App. at 718–20, 666 A.2d 904. The laws of both Maryland and Illinois also require collection agencies to be licensed in order to file collection actions in court, and impose criminal penalties for parties that engage in unlicensed collection activities. See MCALA §§ 4–301(a) and 7–401(b).[9]

Consequently, we adopt the logical and well-reasoned conclusion of *Trice.* Much like a complaint filed by a non-lawyer, "a complaint filed by an unregistered collection agency is [ ] a nullity, and any judgment entered on such a complaint is void." *Trice, supra,* 952 N.E.2d at 1236. We are further persuaded by the *Trice* court's rationale that the imposition of criminal penalties for engaging in unlicensed collection activities establishes an intent by the legislature to void any judgment entered in favor of an unregistered collection agency.

Our holding in *Turkey Point* supports this rationale. *See supra,* 106 Md.App. at 719, 666 A.2d 904 (holding that the "drastic remedy" of deeming a judgment void because it was obtained by a nonlawyer was called for by "[t]he totality of the circumstances, including the long history of rules and legislation aimed at preventing the practice of law by nonlawyers[.]"). Likewise, here, the "drastic remedy" of deeming a judgment void if it was obtained by an unlicensed collection agency is warranted in light of the legislation aimed at preventing such practices. *See, e.g., Hilco, supra,* 765 F.Supp.2d

---

Regardless, the procedural posture does not impact our initial inquiry as to whether the underlying judgments here are void.

**9.** We also point out that much like the defendant in *Trice,* appellants here did not raise LVNV's licensing issue at trial.

at 728–32 (discussing the long-standing consumer protection statutes in force in Maryland, including the MCDCA and MCPA, as well as the implication of the licensure requirements); MCALA § 7–205(c)(4) (amount of penalty imposed for unlicensed collection activities is determined based upon factors including "the deleterious effect of the violation on the public and the collection industry. . . ."); MCALA § 7–401(b) (imposing criminal penalties for parties that engage in unlicensed collection activities). Our conclusion is further supported by *Hilco*, which held that filing a collection action without the requisite license under the MCALA constitutes an "action that cannot legally be taken." *Hilco, supra*, 765 F.Supp.2d at 728.

The Maryland cases addressing an unlicensed party's "status as a claimant" in Maryland courts also bolster our analysis. *McDaniel* considered whether a party must "establish his bona fides regarding licensure at the time of filing, as a matter of law, or whether [the defendant] should plead the lack of a license as an affirmative defense." The *McDaniel* Court held that the lack of a license was not merely an affirmative defense because licensure is an integral part of the landlord's status as a claimant in Maryland. Similarly, here, the legislature has made clear that any entity that "collects consumer claims through civil litigation is . . . required to be licensed. . . ." Md. State Collection Agency Licensing Bd. Advisory Notice 05–10, May 5, 2010. Thus, the licensing requirement contained in the MCALA is an integral part of a collection agency's status as a claimant in Maryland.

Moreover, like the landlord licensing requirement in *McDaniel*, the MCALA licensure requirement is intended to eliminate a perceived harm, rather than to "build the public fisc." *See McDaniel, supra*, 419 Md. at 583, 19 A.3d 927. To be sure, the MCALA imposes penalties for violations of the MCALA—such as engaging in unlicensed collection activities—and the penalty amount is determined based upon factors including "the deleterious effect of the violation on the public and the collection industry. . . ." MCALA § 7–205(c)(4). Additionally, the MCALA does not just mandate licensure, but

also imposes criminal penalties for collection agencies that engage in collection activities without a license. *See* MCALA § 7–401(b).[10]

In light of *McDaniel*, the instant case is distinguishable from *Green*, which is the principal case relied on by the trial court.[11] In *Green*, we refused to deem district court judgments void because the case involved a matter that should have been raised as an affirmative defense. *Green*, 152 Md. App. at 58, 828 A.2d at 836. There, a consumer alleged that a consent judgment was void because there was an error in the address listed on a creditor's statutory notice regarding the location of the consumer's repossessed vehicle. *Id.* We explained that defective notice was a "valid defense to the District Court action." *Id.* at 836. For this reason, we held that *res judicata* barred the consumer's claim alleging that the underlying judgment was void. *Id.* Similarly, we held that the consumer's claim for damages under the MCDCA relating to the lack of notice was barred because she failed to raise the defective notice defense in the prior suit. *Id.* at 836–37. By contrast, here, licensure under the MCALA is an integral part of a collection agency's status as a claimant in Maryland, and the licensure requirement is intended to eliminate a perceived harm, rather than to "build the public fisc." Accordingly, a collection agency's licensure is more aptly characterized as "bona fides" that must be established at the time of filing, rather than an affirmative defense that must be raised by a defendant.

---

**10.** *See also Hilco, supra*, 765 F.Supp.2d at 728–32, for a discussion concerning the legislative history of the MCALA. The *Hilco* court also addressed the intersection between the MCALA and various consumer protection statutes, including the MCDCA and MCPA. *Id.* The *Hilco* court concluded consumers who are sued by unlicensed debt collectors, in violation of the MCALA, may bring a claim for damages under the MCDCA and MCPA. *Id.* This further buttresses our conclusion that the MCALA licensure requirement is a matter of consumer protection rather than simply to raise revenue.

**11.** *See also infra*, Part II, for a more detailed discussion of *Green*.

For these reasons, we hold that a judgment entered in favor of an unlicensed debt collector constitutes a void judgment as a matter of law. Accordingly, any judgments obtained by LVNV in the district court while operating as an unlicensed collection agency are void.

## II. COLLATERAL ATTACK ON VOID DISTRICT COURT JUDGMENTS.

██ We next consider whether appellants may file an action in the circuit court to challenge a void judgment entered in a district court. The circuit court dismissed appellants' action on the basis that Maryland law precludes collateral attacks on existing judgments. We hold that because the underlying judgments are void, appellants may collaterally attack these judgments in a circuit court action.[12]

### A. Collateral Attack Doctrine

We have previously summarized the principles governing the collateral attack of judgments under Maryland law:

> A collateral attack is 'an attempt to impeach the judgment by matters dehors the record, before a court other than the one in which it was rendered, in an action other than that in which it was rendered; an attempt to avoid, defeat, or evade it, or deny its force and effect, in some incidental proceeding not provided by law for the express purpose of attacking it. . . .' [and that] a 'rule of inhibition' [exists] against collateral attacks upon existing judgments. . . . [T]his bar against the collateral attack upon subsisting judgments is, of course, critical to the effectiveness of the judicial system itself, and it has long been applied by the Maryland courts.

*Klein v. Whitehead,* 40 Md.App. 1, 20, 389 A.2d 374 (1978) (citing 49 C.J.S. Judgments § 408).

---

12. We also observe that appellants' complaint asserted five causes of action, including a declaratory judgment count, which could only be brought in the circuit court.

On the other hand, however, "[a] judgment which is void may be collaterally attacked at any time. . . ." *Tucker v. Tucker*, 35 Md.App. 710, 712, 373 A.2d 16 (1977) (citing *Thomas v. Hardisty*, 217 Md. 523, 143 A.2d 618 (1958)). As the Court of Appeals explained:

> A void judgment 'may be assailed at all times, and in all proceedings by which it is sought to be enforced.' *Hanley v. Donoghue*, 59 Md. 239, 243, 244, 43 Am.Rep. 554; *Wilmer v. Epstein*, 116 Md. 140, 145, 81 A. 379. In other words, a void judgment is subject to attack either directly by appeal or collaterally. *Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565; *Staley v. Safe Deposit & Trust Co.*, 189 Md. 447, 455, 56 A.2d 144, 148; *Keen v. Keen*, 191 Md. 31, 38–40, 60 A.2d 200, 203–205. It does not constitute res judicata. *Presstman v. Silljacks*, 52 Md. 647; *Josselson v. Sonneborn*, 110 Md. 546, 552, 73 A. 650. *See also Travelers Indemnity Co. v. Nationwide Construction Corporation*, 244 Md. 401, 410, 224 A.2d 285 (1966); *Thomas v. Hardisty*, 217 Md. 523, 536, 143 A.2d 618 (1958); *Board of Zoning Appeals of Howard County v. Meyer*, 207 Md. 389, 394, 114 A.2d 626 (1955). The invalidity of the Virginia judgment, therefore, does not affect the status of the bank's claim based on the original debt. Its status here is the same as if that judgment had never been entered.

*Cook v. Alexandria Nat. Bank*, 263 Md. 147, 153–54, 282 A.2d 97 (1971). *See also Graham v. Graham*, 190 Md. 434, 444, 59 A.2d 180 (1948) ("[I]f a court acts without jurisdiction its action is a nullity; and equity demands that a proceeding be reopened and a respondent be permitted to answer and defend. . . . The law is settled in this State."); *Ambrose*, 191 Md. at 369, 62 A.2d 359 ("A judgment by a court without jurisdiction over the parties is not merely erroneous, but 'is absolutely void and may be assailed at all times, and in all proceedings by which it is sought to be enforced. . . .' In other words, a void judgment is subject to attack either directly by appeal or collaterally. . . . It does not constitute *res judicata*."). *Id.* (citations omitted).

The Court of Appeals has, however, recognized that the rule permitting collateral attack of void judgments "has probably been more frequently stated than found applicable in cases in this State." *Thomas*, 217 Md. at 536, 143 A.2d 618 (citing cases in which the rule permitting collateral attack of void judgments "was [ ] restated, but found inapplicable. . . .").

## B. The Circuit Court's Rationale

The circuit court relied on *Klein, supra,* 40 Md.App. at 20, 389 A.2d 374, in concluding that the appellants' action constituted an impermissible collateral attack. In *Klein,* we affirmed the dismissal of a suit by a debtor's trustee in bankruptcy against a judgment creditor alleging a foreclosure judgment entered against the bankrupt debtors was tortiously and fraudulently obtained. We observed that the allegations of fraudulent and tortious conduct constituted a defense that "if raised and proved in those earlier actions, would have averted most, if not all, of the damage allegedly suffered by virtue of those actions." *Id.* at 23, 389 A.2d 374. Accordingly, we concluded that the action amounted to a collateral attack on a valid final judgment. *Id.* at 24, 389 A.2d 374.

Appellants distinguish *Klein* on the basis that it did not involve a question that the defendant lacked standing or was otherwise not entitled to pursue the foreclosure action, or that the district court lacked jurisdiction to hear the underlying action. *See Klein,* 40 Md.App. at 23, 389 A.2d 374 ("We have here a situation in which actions were brought by persons facially entitled to bring them, in a court possessing both jurisdiction and venue, against persons properly served with process."). Moreover, the debtors admitted that they knew of their defense during the foreclosure action, but did not pursue it. *Id.* at 23, 389 A.2d 374. Appellants contend that, unlike *Klein,* this is not a case about defenses that could have been raised but were not. Rather, in appellants' view, this case involves underlying judgments that are void because LVNV lacked standing, and the district court, therefore, lacked jurisdiction to consider the case.

The circuit court also cited *Green, supra,* 152 Md.App. at 52, 828 A.2d 821, in support of its ruling. In *Green,* a debtor was sued in the district court by Ford Motor Credit Company ("FMCC"), which claimed a deficiency balance after the repossession and sale of the debtor's automobile pledged as collateral for a loan. *Id.* at 39, 828 A.2d 821. Ms. Green was served and consented to judgment. *Id.* Later, without challenging the district court judgment, Ms. Green filed a class action in the circuit court against FMCC and its counsel. *Id.* Ms. Green claimed that the judgment was fraudulently obtained, in violation of Maryland law, because the statutory notice regarding the location where Ms. Green's repossessed vehicle was being stored contained an error in the address. *Id.* Accordingly, Ms. Green sought "an order voiding all judgments obtained by FMCC against the named plaintiffs and all class members during the past four years" on the basis of fraud, mistake, or irregularity. *Id.* Additionally, Ms. Green sought an award of damages due to violations of the MCDCA in light of FMCC's deficient notice in violation of the MCDCA. *Id.* at 47, 828 A.2d 821.

Regarding the first issue in *Green,* we held that the underlying judgment was not void due to fraud, mistake, or irregularity because "[t]he facts alleged in Counts I–V are insufficient to show fraud, mistake, or irregularity in connection with obtaining the consent judgment." *Id.* at 52, 828 A.2d 821. Next, we addressed Ms. Green's claim for damages under the MCDCA. We observed that defective notice would invalidate the underlying debt. *Id.* Accordingly, because the district court judgment was valid, Ms. Green's claim constituted an impermissible collateral attack on the judgment. *Id.*

In our view, the critical difference is that the underlying judgments in *Klein* and *Green* were valid. Moreover, the claims asserted in the subsequent actions were defenses that could have—and should have—been raised in the underlying proceedings. Accordingly, in *Klein* and *Green,* the general rule prohibiting the collateral attack of a judgment applied. By contrast, here, the underlying judgments are void, insofar as the judgments were obtained by LVNV while it was

operating as an unlicensed collection agency. Thus, *Klein* and *Green* are not dispositive, and we must instead consider whether the "void judgment" exception to the collateral attack doctrine applies.

## C. Discussion

The Court of Appeals has stated that "Maryland law is in total accord with [other] authorities" which have held that:

> Although it is not necessary to take any steps to have a void judgment reversed or vacated, it is open to attack or impeachment in any proceeding, direct or collateral, and at any time or place, at least where the invalidity appears upon the face of the record. It is not entitled to enforcement and is, ordinarily, no protection to those who seek to enforce it. All proceedings founded on the void judgment are themselves regarded as invalid and ineffective for any purpose.
>
> In short, a void judgment is regarded as a nullity, and the situation is the same as it would be if there were no judgment.

*Cook,* 263 Md. at 151–52, 282 A.2d 97. The Court of Appeals has also consistently observed that "a judgment by a court without jurisdiction over the parties is not merely erroneous, but 'is absolutely void and may be assailed at all times, and in all proceedings. . . .' In other words, a void judgment is subject to attack either directly by appeal or collaterally. . . . It does not constitute *res judicata." Ambrose,* 191 Md. at 369, 62 A.2d 359 (citations omitted).

▇▇▇ A collateral attack is defined as " 'an attempt to impeach the judgment . . . before a court other than the one in which it was rendered, in an action other than that in which it was rendered. . . .' " *Klein,* 40 Md.App. at 23, 389 A.2d 374 (citing 49 C.J.S. Judgments § 408). *See also Cook,* 263 Md. at 153, 282 A.2d 97 (considering collateral attack doctrine in the context of a challenge to a Virginia judgment in a Maryland court); 50 C.J.S. Judgments § 717 ("[A] 'collateral attack' is a tactic whereby a party seeks to circumvent an earlier ruling of one court by filing a subsequent action in another court.").

██ Although no Maryland court has had occasion to hold on the merits that a void judgment may be attacked in another court, we cannot ignore the unequivocal pronouncement that "a void judgment . . . is open to attack [ ] in any proceeding, direct or collateral, and at any time or place. . . ." *Cook,* 263 Md. at 151–52, 282 A.2d 97. We are also mindful that we have "no discretion but to follow the law as enunciated by the Court of Appeals." *Freed v. DRD Pool Serv., Inc.,* 186 Md.App. 477, 481, 974 A.2d 978 (2009), *aff'd sub nom., DRD v. Freed,* 416 Md. 46, 5 A.3d 45 (2010). Accordingly, absent any authority to the contrary, we hold that a party may collaterally attack a void judgment in another court. We, therefore, hold that the circuit court erred by dismissing appellants' complaint on the basis that its challenge to the district court judgments constituted an impermissible collateral attack.[13]

For the foregoing reasons, we hold that the circuit court erred in dismissing appellants' complaint. LVNV was not licensed when it obtained judgments against appellants in the district court; accordingly, the underlying district court judgments are void. We further hold that parties may collaterally attack a void judgment in another court. The circuit court, therefore, erred by ruling that appellants' complaint constituted an impermissible collateral attack on the district court judgments. Accordingly, we reverse the judgment of the Circuit Court for Baltimore City, and remand for further proceedings consistent with this opinion.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED. CASE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**

---

**13.** In light of our holding, we do not address appellants' alternative arguments that: (1) the circuit court "has the legal authority to review void judgments entered by the district court of Maryland"; (2) appellants' action is only proper in the circuit court because it is a class action, and seeks, in part, declaratory relief; and (3) public policy supports recognition of an exception to the collateral attack doctrine.