Dissenting Opinion by
NAZARIAN, J.
NAZARIAN, J., dissenting.
I agree with my colleagues that Ms. Gordon’s motion to dismiss this appeal should be denied and that Old Republic Insurance Company’s (“Old Republic”) decision to obtain a collection agency license neither moots the case nor estops Old Republic from challenging the circuit court’s decision. I respectfully disagree, though, that there is any ambiguity in Md.Code (1992, 2015 Repl.Vol.), § 7-101(c) of the Business Regulation Article (“BR”), or any doubt that it applies to an issuer of credit insurance. The General Assembly may well not have meant to include insurance companies generally within the definition of “collection agency” in its 2007 revisions to the Maryland Collection Agency Licensing Act (“MCALA”). But I see no principled way to distinguish credit insurers like Old Republic — which sell, for profit and as their avowed business, insurance policies against default on a debt, then seek to collect after they pay claims — from any other company that buys and collects defaulted debt.
I.
The majority and I agree on the core factual and analytical premises of the case, all of which are undisputed:
1. Countrywide Home Loans (“Countrywide”) lent money to Nancy Gordon.
2. Old Republic issued a credit insurance policy (the “Policy”) to Countrywide.
3. Ms. Gordon’s debt to Countrywide qualified as a consumer claim. See op. at 5 n. 3, 137 A.3d at 240 n. 3.
4. Ms. Gordon defaulted on the debt.
*23 5. Countrywide made a claim against the Policy.
6. Old Republic paid Countrywide on the claim.
7. Old Republic became subrogated to Countrywide’s rights against Ms. Gordon.
8. Old Republic was not licensed as a collection agency in Maryland at any relevant time.[1]
We agree as well that the outcome of this case is driven by well-settled principles of statutory construction, op. at 15-17, 137 A.3d at 245-46, as applied to the definition of “collection agency” found in the 2007 amendment of MCALA. If a collection agency sues to collect a consumer debt at a time when it lacks a license, any ensuing judgment is void. Finch v. LVNV Funding LLC, 212 Md.App. 748, 71 A.3d 193 (2013). Ms. Gordon argued in this case that Old Republic was a collection agency at the time its subrogation rights ripened, and that she was entitled to judgment on Old Republic’s collection claim because Old Republic lacked a debt collector’s license at the time it sought to enforce the claim. The Circuit Court for Baltimore County agreed.
II.
As the majority states it, “the issue before us is whether, as a matter of law, Old Republic was a collection agency pursuant to MCALA.” op. at 13, 137 A.3d at 244. The definition of collection agency has five elements: a collection agency is “[a] a person who [b] engages directly or indirectly in the business of ... collecting a [c] consumer claim the [d] person owns, [e] if the claim was in default when the person acquired it.” BR § 7 — 101(c)(ii) (bold, bracketed markers added). Old Republic indisputably satisfied four of these elements in connection with Ms. Gordon’s debt: [a] Old Republic is a person for purposes of MCALA; [c] Ms. Gordon’s debt qualified as a consumer *24 claim; [d] the debt was originally owed to Countrywide, but Old Republic eventually came to own it; and [e] the debt was in default at the time Old Republic took ownership. So Old Republic’s status as a collection agency, and thus this case, turns on whether it “engages directly or indirectly in the business of’ collecting consumer claims.
Old Republic casts this question in broad terms — overly broad, in my view. It characterizes itself as “[a]n insurer pursuing subrogation rights as an adjunct of its insurance business,” op. at 14, 137 A.3d at 245, and argues that insurance companies are engaged in the business of insurance, not debt collection. The majority ultimately agrees, finding ambiguity in the phrase “in the business of’ from the absence of Maryland case law interpreting it and the use of varying formulations in other states, op. at 17-19, 137 A.3d at 246-48. Then, in light of that ambiguity, the majority looks at the legislative history of the 2007 MCALA amendments and finds no intention to include insurance companies. Id. at 18-21, 137 A.3d at 247-49.
To me, this is the wrong question. The issue is not whether the General Assembly meant to exclude all insurance companies from MCALA — we don’t have all insurers before us — or whether insurers who seek subrogation can be characterized as a “debt purchaser.” The issue is whether persons (who can be insurers) who issue credit insurance policies that entitle them to collect defaulted debts are “in the business” of collecting consumer claims. Or, put another way, the relevant “business” for purposes of this case isn’t insurance, but credit insurance. And viewed through that lens, there is no ambiguity at all: Old Republic was — directly, by design and with the blessing of the Maryland Insurance Administration — in the business of collecting consumer claims.
The picture sharpens when one looks more closely at credit insurance itself. Citing a classic treatise on insurance, Old Republic describes credit insurance as “a form of surety insurance and general casualty insurance” that is “generally defined as insurance against loss or damage resulting from failure of debtors to pay their obligations to the creditor.” *25 (quoting 12 L.R. Russ & T.F. Segalla, Couch on Insurance 3d, § 167.31 (2005)). The Policy itself is not contained anywhere in the Record Extract or the parties’ various appendices,[2] but its purpose and structure, and the purpose and structure of this line of business, are not in dispute. Lenders buy (or require borrowers to buy on their behalf) credit insurance as protection against the possibility that borrowers fail to pay the loan. When the borrower (Ms. Gordon) defaults, the insured (the lender, in this case Countrywide) can make a claim against the policy to collect the unpaid debt. And “[i]n the event of any payment under this Policy, [Old Republic] shall be subrogated to all of [Countrywide]’s rights of recovery against [Ms. Gordon] and any other person or organization liable under the terms of the defaulted Note and against any reserve or holdback funds in its hands.... ” (Emphasis added.) Importantly, Old Republic’s rights to step into its insured’s shoes ripen after the borrower defaults and the Company pays on the claim.
Old Republic’s agreement to assume the risk of Countrywide’s loan to Ms. Gordon was not an act of altruism or charity. According to its Company Details Report from the Maryland Insurance Administration, Old Republic is a property and casualty insurance company licensed to sell seven different lines of insurance. The credit insurance subsidiary before us in this case is part of a New York Stock Exchange-traded holding company. Old Republic underwrites the risks it is assuming and charges a premium in exchange for its agreement to assume that risk, and the risk it assumes includes some assessment of the likelihood that it will collect any unpaid balance from the borrower. If Old Republic *26 predicts the risks appropriately and calculates premiums correctly, it makes a profit. But whether or not it succeeds, I would hold that Old Republic is, by any rational measure, in the business (and directly so) of selling credit insurance in Maryland for profit, a contractual relationship that includes an enforceable right, after default and payment to the original creditor, to collect the unpaid consumer debt previously owned by its insured. And for that reason, I would affirm the circuit court’s summary judgment in favor of Ms. Gordon.
III.
Two other points lend further support to my view of this case.
First, although I would affirm the circuit court’s judgment without analyzing the legislative history of the 2007 MCALA amendments, credit insurers do, in my view, fall within the universe of debt collectors that the General Assembly was trying to capture in the updated definition of “collection agency.” Indeed, from a functional standpoint, credit insurers are nearly indistinguishable from third-party debt collectors. Both acquire consumer debt from a prior (if not the original) owner — and the use of the broader word “acquired,” rather than “purchased,” seems to contemplate that the collection agency could take ownership of the debt through different mechanisms. Upon acquisition, both step into the shoes of their predecessors and take the predecessor’s rights, whatever they may be, to collect the unpaid portion of the debt.
The only differences between the two businesses that I can discern lie in the timing and manner of calculating what each pays to acquire the debt. Debt purchasers buy debt at the back end of the life cycle. They pay a discount from its face value, and if they negotiate that discount properly, they collect more from debtors than they paid. Credit insurers, on the other hand, get paid up front, in the form of a premium that covers the risk of default and projects the risk of collection (or not) through subrogation after they pay the claim. In both scenarios, the original creditor gets paid for the debt after *27 default and pays, either by taking less than it’s owed or by paying a premium, for the hedge against recovering less or nothing at all. Even with these differences, though, the ability to collect unpaid debt from consumer debtors that originated elsewhere is a core element of their businesses. From the perspective of the debtor — the party that the Maryland Consumer Debt Collection Act is designed to protect — it makes no difference how the new creditor came to acquire their debt, only that they’re trying to collect it. And in that role, I see nothing in the statute or the legislative history expressing an intention to exempt credit insurers from fair debt collection rules.
Second, MCALA does (and did before the 2007 amendments) exempt certain specified businesses from its reach— mostly financial institutions, but also, among others, “a title company as to its escrow business.” BR § 7-102(b)(7). This tells me that the General Assembly understood that not all insurers and insurance products are the same, and confirms my belief that Old Republic’s request for a sweeping exemption overstates the question.
For these reasons, I respectfully dissent.

. Although Ms. Gordon sought to use Old Republic’s eventual decision to obtain a license for estoppel rather than evidentiary purposes, I view it as being in the nature of a subsequent remedial measure, cf. Maryland Rule 5-407, which only bolsters my agreement with the majority on this point.

. Old Republic's descriptions of and one quotation from the Policy in its brief cite two sources: the Reply to Opposition to Motion for Summary Judgment that it filed in the circuit court, a four-page memorandum that neither attaches nor even quotes from the Policy, and its motion to alter or amend, a longer document that quotes the one provision of the Policy that follows but doesn't attach it. The rest of the Policy language doesn't really matter for my purposes, but it’s frustrating that the many heated and voluminous filings don't contain the one document that defines the parties’ rights vis-á-vis each other.