985 A.2d 93

**Ronald J. ROSS**

v.

**MR. LUCKY, LLC.**

**No. 518, Sept. Term, 2008.**

Court of Special Appeals of Maryland.

Dec. 29, 2009.

512

Ronald J. Ross, Solomons, Pro Se.

V. Charles Donnelly, Solomons, for Appellee.

Panel: DEBORAH S. EYLER, MATRICCIANI and CHARLES E. MOYLAN, JR. (Retired, Specially Assigned), JJ.

DEBORAH S. EYLER, J.

This appeal concerns real property in Solomons, Calvert County, known as "the Tiki Bar." Since 2005, the Tiki Bar property has been owned by Mr. Lucky, LLC ("Mr. Lucky"), the appellee. Ronald J. Ross, the appellant, owns residential property that borders a segment of the western boundary of the Tiki Bar property.

Mr. Lucky filed a site plan application with the Calvert County Department of Planning and Zoning ("DPZ") and the Calvert County Planning Commission ("CCPC") reflecting planned improvements for the Tiki Bar property. After the plan was denied by an administrative officer, Mr. Lucky appealed to the Calvert County Board of Appeals ("Board"). The matter was bifurcated. In the part of the matter we are concerned with in this appeal, the Board held a *de novo* hearing and made certain findings favorable to Mr. Lucky (which we shall explain below). Ross brought an action for judicial review in the Circuit Court for Calvert County, which upheld the Board's decision. This appeal followed.

Ross poses several questions for review, which we have reordered, combined, and reworded as follows:

I.  Did the Board err by denying him the opportunity to cross-examine Mr. Lucky's witnesses?

II. Did the Board have statutory authority to modify a site plan, or to permit an illegal use of a parking lot on the Tiki Bar property?

II. Did the Board err in granting certain variances?

IV. Must the Board's decision be vacated because one of its members refused to recuse himself from this case? [1]

For the reasons that follow, we answer Question I in the affirmative. Accordingly, we shall reverse the judgment of the circuit court and remand the case to that court with instructions to vacate the decision of the Board and remand the matter to the Board for further proceedings not inconsistent with this opinion. Our disposition of Question I makes it unnecessary to address the remaining questions.

## FACTS AND PROCEEDINGS

The Tiki Bar property occupies 3.26 acres zoned in the Solomons Town Center/B4 planning sub-area of Calvert County. It is comprised of an outdoor tavern (the actual Tiki Bar); a restaurant building; a long and narrow structure once used as a motel; several retail sales buildings; and numerous outbuildings and sheds.[2]

---

**1.** As posed by Mr. Ross, the questions presented are:

1. Whether the Circuit Court for Calvert County erred in upholding the Board's decision that an asphalt parking lot on an approved site plan was really a patron area, when neither the Annotated Code of Maryland nor the Calvert County Zoning Ordinance grants the local Board of Appeals jurisdiction to modify an approved site plan?

2. Whether the Circuit Court for Calvert County erred in upholding the Board's approval of a variance which permitted consumption of alcoholic beverages on an independent patron use of the subject property when such uses are unlawful and non-permitted under the Annotated Code of Maryland and the Calvert County Zoning Ordinances?

3. Whether the circuit Court [for] Calvert County erred in upholding the variance granted by the Board when the Board, in violation of § 11–1.01(A) of Calvert County Zoning Ordinance, failed to satisfy the six prerequisites for granting a variance, and, indeed, failed to make express *factual* findings as to any of those prerequisites?

4. Whether the Circuit Court for Calvert County erred in concluding that the Board of Appeals appropriately denied the Appellant his right to cross-examine Appellees' witnesses in violation of the due process clause of the Maryland Declaration of Rights?

5. Whether the Circuit Court for Calvert County erred in concluding that the Board's Chairman was legally justified in failing to recuse himself when the record established two apparent conflicts of interest and Article 66B, § 4.07(a)(9) of the Annotated Code of Maryland unequivocally requires recusal under such circumstances?

**2.** At the time of the hearing in this case, the restaurant building was partially occupied and was about to become fully occupied.

The main structures on the Tiki Bar property back up to the lot's perimeter and face each other. Between them is a central outdoor area that is paved over for parking, although, according to some of the evidence presented, it has not been used for parking for quite some time. Rather, that central outdoor area, often called the "general patron area," is used as an outdoor gathering place for patrons of the Tiki Bar property. The north side of the property is bounded by Charles Street, which is an extension of Route 2 in Solomons. The west side of the property is bordered by the back yards of a number of waterfront residences, including that owned by Ross and his wife. The east side of the property is bordered by other commercial properties. A parking area occupies the south side of the property.

The Tiki Bar property first was developed as a tavern in the early 1980's, before the 1986 enactment of the Solomons Town Center Zoning Ordinance ("SZO"). The outdoor tavern is a nonconforming use and the restaurant, outbuildings, sheds, and former motel do not meet the 50–foot setback requirements of the SZO. Many of the structures on the west side of the property are situated within that setback area. In April 2006, the Board granted Mr. Lucky's request for an expansion of the nonconforming tavern building to allow two kiosk bars within the general patron area. (BOA Case 06–3299.) The Board's decision was upheld on judicial review in the Circuit Court for Calvert County.

Mr. Lucky filed the site plan application at issue in this appeal in June 2006. As proposed, the site plan showed certain modifications to the physical structures on the property and to the uses for the property. Primarily, Mr. Lucky was planning to further develop the property's "Tiki Village" theme by covering the general patron area with sand and adding wooden walkways, potted plants, and other features that would create a tropical beach setting.[3] It planned to use the motel structure for office space, to expand the restaurant

---

3. The Tiki Bar operates only from April to October.

building to include an already-existing structure next to it, to convert one of the accessory sheds into a restroom, and to use other of the outbuildings for retail uses.

The site plan application was denied by an administrative hearing officer on the ground that on its western side the Tiki Bar property was in violation of a 50–foot setback requirement of the SZO; that certain commercial uses for those buildings were in violation of the 50–foot setback restriction; that Mr. Lucky is not permitted to use adjacent Maltby Street (a public right of way) for any purpose; and that a proposed exterior accessory use on the site plan was an impermissible expansion of a nonconforming structure (the outdoor tavern).

On December 21, 2006, Mr. Lucky challenged the administrative hearing officer's decision before the Board of Appeals. The Board bifurcated the matter into Case No. 07–3403A ("Case A") and Case No. 07–3403 ("Case B").

On February 15, 2007, the Board held a *de novo* hearing in Case A. The County Attorney stipulated that all the buildings shown on the site plan preexisted the enactment of the SZO, and therefore the existence of the 50–foot setback. The Board issued its written decision in Case A on March 14, 2007, ruling, among other things, that the "sheds and accessory buildings along the west property line, behind the restaurant and toward the rear of the subject property, have been in existence prior to the adoption of the [SZO], and are therefore considered to be pre-existing, non-conforming uses." Ross filed a petition for judicial review of that decision in the Circuit Court for Calvert County, which affirmed the Board. Ross noted an appeal to this Court. Our decision in that case is still pending.

On April 12, 2007, the Board held a *de novo* hearing in Case B, which is the genesis of this appeal. At the outset of the proceedings, Ross reminded the Chairman that he had filed a motion to intervene as a party. The Board voted to deny the motion. Also before the evidentiary phase of the hearing, Ross asked for, among other things, permission to examine the witnesses called by the parties. The Board denied that request and voted that the hearing would be conducted in

accordance with the Board Rules, except that individuals wishing to make a presentation each would have five minutes to do so instead of three minutes.

Mr. Lucky called seven witnesses. The first, Dan Kelsh, is a professional engineer who testified as an expert. At the close of Kelsh's direct examination, Ross asked permission to cross-examine the witness, and was told by the Chairman that he could not do so. The Chairman made it clear that Ross would not be permitted to cross-examine any of Mr. Lucky's witnesses and that any further request would be futile.[4]

Mr. Lucky's second witness was Pat Donovan, one of the principals in the LLC. The remaining witnesses for Mr. Lucky were people who lived nearby and had longtime familiarity with the Tiki Bar property and how it had been used since its inception.

The Board called and asked questions of David Humphreys, the Planning Commission Administrator. It then allowed comments by members of the public. Ross spoke first. He moved 51 documents into evidence. After his five minutes were up, he was cross-examined by counsel for Mr. Lucky.

Seven additional members of the public, including Faith Ross, Ross's wife, made comments.

At the conclusion of the hearing, the record was held open for ten days for people to submit any additional written materials they wished to have considered.

---

**4.** The exchange immediately following Kelsh's direct examination was as follows:

ROSS: Mr. [Chairman], may I have a quick word?

CHAIRMAN: Just a second, sir. Do the Board members have any questions of Mr. Kelsh? Dr. Ross?

ROSS: Just for the record, it's perfectly clear at this time I cannot ask a question of Mr. Kelsh?

CHAIRMAN: That is correct.

ROSS: For the record, it's perfectly clear that you're denying the right of cross examination of Mr. Kelsh?

CHAIRMAN: Refer to the previous motion that was made and approved [that the Board Rules be followed except for the 3 minute limit].

ROSS: Thank you.

On May 3, 2007, the Board met and officially accepted into evidence the written material that had been submitted within ten days of the close of the hearing. The Board then read into the record its decision in the case. The written decision itself was issued on May 9, 2007.

The Board ruled that the proposed retail uses for the buildings in the 50–foot setback area are permitted commercial uses within the zone, for which no variance is necessary, and that, "in the interest of clarity and closure on this matter, the Board concludes that the criteria for the subject variances as set forth in Section 11–1.01.A of the Calvert County Zoning Ordinance have been met." With respect to the "general patron area," the Board ruled that the entire area had been used as a congregation place beginning before the adoption of the SZO, and therefore the continued use of the entire general patron area for that purpose was not an expansion of a nonconforming use and did not require Board approval. Finally, the Board found that Mr. Lucky had not demonstrated that any proposed expansion of the nonconforming general patron area beyond the entire existing area met the criteria for expansion of a nonconforming use.

Accordingly, the Board's order granted the variances in the 50–foot setback requirements for the nonconforming buildings along the western boundary of the property with the allowed commercial uses (even though according to the Board it was not necessary to do so), affirmed the existing area of the general outdoor patron area, and denied any expansion of that area.

## STANDARD OF REVIEW

When reviewing an appeal from a circuit court's judicial review of an administrative agency decision, we review the agency's decision, applying the same standard as the circuit court. *Trinity Assembly of God of Balt. City, Inc. v. People's Counsel for Balt. County,* 407 Md. 53, 77, 962 A.2d 404 (2008); *P Overlook, LLLP v. Bd. of County Comm'rs of Wash. County,* 183 Md.App. 233, 247, 960 A.2d 1241 (2008).

As to factual determinations, we must affirm if there is substantial evidence to support the agency's findings. *Trinity Assembly,* 407 Md. at 78, 962 A.2d 404; *P Overlook,* 183 Md.App. at 247, 960 A.2d 1241. "Substantial evidence" is " 'such evidence as a reasonable mind might accept as adequate to support a conclusion.' " *People's Counsel for Balt. County v. Loyola Coll. in Md.,* 406 Md. 54, 67, 956 A.2d 166 (2008) (quoting *People's Counsel for Balt. County v. Surina,* 400 Md. 662, 681, 929 A.2d 899 (2007)).

We review an administrative agency's conclusions of law *de novo,* although we give weight to an agency's interpretation of a statute or ordinance it is charged with enforcing. *See, e.g., Md. Aviation Admin. v. Noland,* 386 Md. 556, 572, 873 A.2d 1145 (2005) (" '[A]n administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts.' ") (quoting *Bd. of Physician Quality Assurance v. Banks,* 354 Md. 59, 69, 729 A.2d 376 (1999)); *Marzullo v. Kahl,* 366 Md. 158, 172, 783 A.2d 169 (2001) (same). *See also P Overlook,* 183 Md.App. at 248, 960 A.2d 1241 ("[I]n determining whether the agency was erroneous in its legal conclusion, some deference is given to the agency and its expertise in administering the law is considered."). If the agency draws legal conclusions based on matters outside its area of expertise, however, we apply *de novo* review. *Loyola Coll. in Md.,* 406 Md. at 67–68, 956 A.2d 166.

When the agency acts in a discretionary matter, a more deferential standard applies. *Spencer v. Md. State Bd. of Pharmacy,* 380 Md. 515, 529–30, 846 A.2d 341 (2004). Discretionary acts of an administrative agency are reviewed under the arbitrary and capricious standard. *Id.* at 530–31, 846 A.2d 341.

## DISCUSSION

Ross contends the Board denied him due process of law, in violation of Article 24 of the Maryland Declaration of Rights, by denying him the opportunity to cross-examine Mr. Lucky's

witnesses.[5] Mr. Lucky counters that the Board merely enforced its own rules (except that it granted Ross an additional two minutes to make his presentation), and that Ross was not entitled to cross-examine its (Mr. Lucky's) witnesses under those rules.

Ross maintains that, under *Dorsey v. Bethel A.M.E. Church,* 375 Md. 59, 825 A.2d 388 (2003), he was a party to the proceeding before the Board and, as such, he was constitutionally entitled to an opportunity to cross-examine the witnesses called by Mr. Lucky, as the applicant.

In *Dorsey,* the Court explained that, "[a]bsent a statute or a reasonable regulation specifying criteria for administrative standing, one may become a party to an administrative proceeding rather easily." *Id.* at 72, 825 A.2d 388 (quoting *Sugarloaf Citizens' Ass'n v. Dep't of Env't,* 344 Md. 271, 286–87, 686 A.2d 605 (1996)). The Court listed examples of the level of participation necessary to confer standing in an administrative proceeding: submitting one's name in writing as a protestant; testifying before the agency; submitting into evidence a letter of protest; identifying oneself on the agency record as a party to the proceedings; and submitting one's name to a board of appeals as one who would be aggrieved by an adverse decision. *Id.* at 72–73; *Sugarloaf,* 344 Md. at 286–87, 686 A.2d 605; *Md.-Nat'l Capital Park & Planning Comm'n v. Smith,* 333 Md. 3, 9–11, 633 A.2d 855 (1993); *Morris v. Howard Research & Dev. Corp.,* 278 Md. 417, 422–23, 365 A.2d 34 (1976).

■ Under the authority of these cases, as applied to the undisputed facts and circumstances about the proceedings before the Board, *see Smith,* 333 Md. at 9, 633 A.2d 855 (determination whether an entity is a party to an administrative proceeding "must be made based on the facts of each

---

**5.** Article 24, entitled "Due Process," provides:

That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner destroyed, or deprived of his life, liberty or property but by the judgment of his peers, or by the Law of the land.

individual case"), Ross was a party to the proceedings. This is so notwithstanding that his motion to intervene was denied. Ross appeared before the Board, testified, and moved 51 exhibits into the record. *See Morris,* 278 Md. at 423, 365 A.2d 34 (concluding that the petitioner was a party to the Board proceedings because he "was present at the hearing before the Board, testified as a witness and made statements or arguments as to why the amendments to the zoning regulations should not be approved.").

■ Under Maryland law, regardless of the language of a particular county zoning ordinance or the procedural rules for its board of appeals, due process affords interested parties a reasonable right to cross-examine witnesses in a proceeding in which an administrative agency performs adjudicatory functions. *Mayor & City Council of Rockville v. Woodmont Country Club,* 348 Md. 572, 582, 705 A.2d 301 (1998) ("[T]he right of reasonable cross-examination attaches to adjudicatory administrative hearings."). This right was recognized decades ago by the Court of Appeals in three seminal zoning cases. In *Hyson v. Montgomery County,* 242 Md. 55, 217 A.2d 578 (1966), the Court opined that, "when an administrative board or agency is required to hold a public hearing and to decide disputed adjudicative facts based upon evidence produced and a record made, ... a reasonable right of cross-examination must be allowed the parties." *Id.* at 67, 217 A.2d 578. It held that the right had been waived in that case, however, because unlike the circumstances in this case there was not a clear request by the protestants to cross-examine the witnesses.

Soon thereafter, in *Town of Somerset v. Montgomery County Board of Appeals,* 245 Md. 52, 225 A.2d 294 (1966), the Court observed that its *Hyson* opinion "ma[de] clear the rule that in an adversary proceeding before an administrative board, the opportunity for reasonable cross-examination is a basic right," *id.* at 65, 217 A.2d 578, and held that, by making a timely objection to the board's ruling that they could not cross-examine the applicant's witnesses, the protestants pre-

served their due process issue for review. Moreover, the Court held that a board rule allowing the protestants to call the applicant's witnesses and examine them was not "the substantial equivalent of the right to cross-examine immediately after the direct testimony of the witness has been concluded." *Id.* at 66, 217 A.2d 578. Thus, the denial of cross-examination not only was error, but was error that "vitiated the proceedings," and therefore prejudiced the protestants. *Id.* at 67, 217 A.2d 578.

Finally, in *Bryniarski v. Montgomery County Board of Appeals*, 247 Md. 137, 230 A.2d 289 (1967), the Court held that the circuit court erred in its conclusion that the petitioners were not prejudiced by the board's denial of cross-examination, stating:

> As we have concluded that at least three of the [interested parties/appellants] were persons aggrieved and, as such, had status to maintain the appeal from the Board to the Circuit Court and from the Circuit Court to us, and further that there was a prejudicial denial of due process of law by the Board's refusal to permit cross-examination of the applicant's witnesses, we will reverse the order of the lower court, remand the case to that court with instructions to remand the case to the Board for a new hearing in which the right of cross-examination will be afforded.[6]

*Id.* at 149, 230 A.2d 289.[7] *See also Birckhead v. Board of County Commr's*, 260 Md. 594, 273 A.2d 133 (1971) (noting that, "the opportunity of denial and rebuttal is not a substitute

---

6. In an opinion filed prior to the filing of the *Town of Somerset* opinion, the circuit court had concluded that the petitioners were not prejudiced by the denial of cross examination because they were able to call the applicant's witnesses as their own and examine them as such.

7. In another opinion of the same vintage, *Gorin v. Bd. of County Commr's for Anne Arundel County*, 244 Md. 106, 110, 223 A.2d 237 (1966), the Court held that, in an adjudicatory proceeding before an administrative agency, due process requires the party having the burden of proof to adduce substantial evidence in support of his request.

for cross-examination" unless the administrative body is acting in a legislative rather than a judicial capacity).

In the case at bar, Ross specifically and timely asked to cross-examine Mr. Lucky's witnesses, and was told he could not. It is undisputed that the proceedings before the Board were quasi-judicial, rather than legislative, because the dispute centered exclusively on the zoning ordinance as it applied to a single landowner, and " 'required [the Board] to hold a public hearing and to decide disputed adjudicative facts based upon evidence produced and a record made. . . .' " *Woodmont Country Club, supra,* 348 Md. at 582, 705 A.2d 301 (quoting *Hyson, supra,* 242 Md. at 67, 217 A.2d 578).

Mr. Lucky maintains that the Board's rules about examination of witnesses were sufficient to protect Ross's due process rights and that he simply wanted to proceed without having the rules apply to him. We disagree.

The Rules of Procedure for the Calvert County Board of Appeals, adopted under the authority granted by the General Assembly, and pursuant to SZO section 11–1.06, include Rule 4–101(G)(5),[8] respecting testimony of witnesses. It states:

Any person wishing to testify in support of or in opposition to the request shall be administered an oath by the Chairman or Clerk to the Board and shall testify next. With the Chairman's permission, such persons may ask questions of the applicant and/or his witnesses *at this time.* The Board members or the Board's Counsel may ask questions of such persons at any time during their testimony.

(Emphasis added.) Under this rule, an interested person may testify and may call the applicant and/or the applicant's witnesses at that time. In other words, the rule confers the same

---

**8.** The Rules of Procedure for the Calvert County Board of Appeals (as revised July 6, 2006) contain two consecutive subsections 4–101(G)(5). The August 5, 2004 version in the Appendix of the appellee's brief has a similar apparent typographical error, with two consecutive subsections 4–101(H)(5). Our quotation is of the second subsection (G)(5).

examination right that the Court of Appeals in *Town of Somerset* held **not** to be substantially equivalent to the right of cross-examination.[9]

We hold that the Board's outright denial of all right of cross-examination to Ross, in the face of his request for cross-examination, was a violation of his due process rights. The Board's reliance upon a rule that does not afford an opportunity for cross-examination in adjudicative proceedings, and indeed merely confers discretion to allow an interested party to call and examine the applicant and the applicant's witnesses, a process that is not the functional equivalent of cross-examination, was an error of law and, to the extent it involved exercising discretion, was arbitrary and capricious.[10]

---

9. By contrast, the rules governing board proceedings in some other counties expressly provide for the right of cross-examination. *See, e.g.,* Rules of Practice and Procedure of the Board of Appeals, Appendix B, Anne Arundel County Code (2005), Rule 4–104(c) ("The parties shall have the opportunity to cross-examine witnesses. The chairman shall permit a representative or representatives of persons in opposition the opportunity to conduct cross-examination."); Rules of Procedure for the Montgomery County Board of Appeals, section 7.2.4(e) ("Unless the Board provides otherwise, the applicants and their supporters are heard first. Each person who speaks is subject to cross-examination."); *id.* § 7.2.4(f) ("Following the presentation of the applicant, the opponents state their case. Each person is subject to cross-examination."). The rules for the boards of appeals in some other counties do not expressly address the right of cross-examination; unlike Calvert County, they do not run afoul of due process by specifying a substitute procedure that clearly is not substantially equivalent to cross-examination. *See, e.g.,* Rules of Practice and Procedure for the Baltimore County Board of Appeals, Rule 6 ("Appearances and Practice Before the Board of Appeals") (silent as to cross-examination).

10. To be sure, the right of cross-examination in an adjudicative agency proceeding is a right to reasonable cross-examination, and therefore is subject to reasonable limitations. *Woodmont Country Club, supra,* 348 Md. at 582, 705 A.2d 301; *Hyson, supra,* 242 Md. at 67, 217 A.2d 578. What is "reasonable" will depend upon "the circumstances of each particular case, the nature of the proceedings, and the character of the rights which may be affected." *Hyson,* 242 Md. at 67, 217 A.2d 578. In the case at bar, the number of protestants participating in the hearing was small and of that number only Ross asked for the opportunity to cross-examine Mr. Lucky's witnesses. Nevertheless, the Board denied all opportunity for cross-examination.

**JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR CALVERT COUNTY WITH INSTRUCTIONS TO VACATE THE DECISION OF THE BOARD OF APPEALS AND REMAND THE MATTER TO THAT BOARD FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE APPELLEE.**