REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1084

September Term, 2014

_____

REZA MOSTOFI

v.

MIDLAND FUNDING, LLC, ET AL.

_____

Zarnoch,
Berger,
Nazarian,

JJ.

_____

Opinion by Nazarian, J.

_____

Filed: July 2, 2015

Reza Mostofi appeals from the decision of the Circuit Court for Montgomery County to dismiss his Second Amended Complaint against Midland Funding, LLC ("Midland Funding"), Midland Credit Management, Inc. ("Midland Credit"), and Lyons, Doughty & Veldhuis, P.C. ("Lyons") (collectively, the "appellees") with prejudice.[1] Mr. Mostofi alleged that the appellees committed violations of the Fair Debt Collection Practices Act (the "FDCPA") and analogous state statutes in the course of purchasing consumer credit card debt Mr. Mostofi had incurred, attempting to collect that debt, and suing (successfully) to reduce that debt to judgment in an earlier case (the "collection case"). We agree with the circuit court that Mr. Mostofi cannot attack that judgment collaterally, and we affirm its decision to dismiss this case.

## I. BACKGROUND

On November 12, 2012, Lyons brought the collection case in the District Court of Maryland for Montgomery County against Mr. Mostofi and on behalf of its clients, Midland Funding and Midland Credit. The complaint alleged that Mr. Mostofi owed $4,506.82 on a credit card account with Chase Bank, N.A. ("Chase"), and that Midland Funding had purchased the debt from Chase. Although the record does not contain a transcript, Mr. Mostofi's Notice of Intent to Defend raised the two arguments he asserts here: that he "is not indebted to [Midland Funding] as alleged" and that Midland Funding

---

[1] Mr. Mostofi's Complaint also named Steven Brunzell as a defendant, but Mr. Brunzell is not a party to this appeal.

"does not have standing to sue." It is less clear whether he articulated these arguments at the hearing in the district court. But there is no dispute that the district court entered judgment for Midland Funding and Midland Credit in the amount of $4,506.82, plus costs, on July 26, 2013.

It is equally undisputed that Mr. Mostofi appealed the judgment to the Circuit Court for Montgomery County, where the case was heard *de novo* on October 31, 2013. Again, Mr. Mostofi challenged Midland Funding's standing to sue him, and he offered evidence that, he argued, demonstrated that the debt belonged to Washington Mutual, if to anyone:

> MR. MOSTOFI: [Y]our honor, what you're looking at is a statement from Washington Mutual.
>
> THE COURT: I understand that.
>
> MR. MOSTOFI: And it has the same account number that [counsel] alleges was Chase card.
>
> THE COURT: Okay.
>
> MR. MOSTOFI: And my point is that if this wasn't a Washington Mutual I wouldn't have a statement saying that it was a Washington Mutual card.
>
> THE COURT: Okay.
>
> MR. MOSTOFI: So at some point, apparently, allegedly, it transferred from Washington Mutual to Chase, but there is no bill of sale showing that occurred. And in order for them to show standing and the fact that they are the rightful owner, they need to show the proper chain of assignments.

Lyons offered affidavits from Midland Funding employees to prove that it owned the debt, and Mr. Mostofi sought to cross-examine the affiants. It appears that the court

2

rejected this request, and, in any event, that the affiants were not present. Mr. Mostofi also disputed the amount owed, and identified what he claimed were inconsistencies between statements about amounts owed as principal or interest. Lyons attempted to demonstrate that the debt was accurate by calling Mr. Mostofi to the stand and asking him details about several of the charges, with mixed success.

Based on the evidence, the circuit court ruled from the bench, and stated on the record that it ultimately disbelieved Mr. Mostofi and credited documents that Midland Funding offered into evidence but are not part of the record here:

> The court has had an opportunity—has received into evidence [Midland Funding's] Exhibit Number 1, which is a document which contains voluminous references to this account, the Chase account, with [Mr. Mostofi's] name and account number on it, with multiple charges that [Mr. Mostofi] has testified he doesn't have any specific recollection of having used, which begs credulity at a minimum.
>
> * * *
>
> The court is satisfied that [Midland Funding] has met its burden, and proven that they are the owner of the debt and the court will enter judgment in favor of [Midland Funding] in the amount of . . . $4,506.82 plus costs.

Mr. Mostofi moved to set aside or vacate the judgment on December 5, 2013. The record here does not reveal a ruling on that motion or whether Mr. Mostofi appealed the judgment; the appellees proffer that the motion was denied and that Mr. Mostofi did not

3

appeal.[2]  Regardless, there is no dispute that the judgment in the collection case became, and for our purposes is, final.

Mr. Mostofi filed the Complaint in this case on November 27, 2013, before he filed his motion to set aside or vacate the judgment in the collection case.  He amended the Complaint twice, and the Second Amended Complaint named Midland Funding, Midland Credit, and Lyons as defendants.  As before, in the Complaint he contends that Midland Funding does not own his debt and that the amount allegedly owed was false.  He complained that he had been deprived of the opportunity to cross-examine Midland Funding's affiants—whom he characterized as "trial witnesses"—in violation of his due process rights.  He argued that because Midland Funding did not own the debt, lacked standing to sue him and that the judgment in the collection case was void.  And he alleged that Midland Funding and Midland Credit's assertions that they owned the debt, and the amount of the debt—as well as Lyons's prosecution of the case on these grounds— constituted "false, deceptive, or misleading representations," through which the appellees violated the FDCPA, the Maryland Consumer Debt Collection Act, and the Maryland Consumer Protection Act.

Midland Funding, Midland Credit, and Lyons all moved to dismiss.  Midland Funding and Midland Credit argued that Mr. Mostofi's claims were barred by *res judicata* and collateral estoppel, and that in the alternative, he had failed to state a claim for which

---

[2] And the Judiciary's case search database confirms that it was denied on March 11, 2014.

4

relief could be granted. Lyons asserted that it had never been served in this case, and as such, filed its Motion before the Second Amended Complaint.

The circuit court held a hearing on the Motions on July 16, 2014. Counsel for Lyons proffered that he had brought the firm's receptionist, who was not authorized to receive service on its behalf, and who would testify that the sheriff who allegedly served Lyons incorrectly left the papers with her instead. When pressed, Mr. Mostofi said that he would "accept [Lyons's] word for it." Although he asked for another opportunity to serve Lyons, the court granted Lyons's Motion to Dismiss. The court then heard argument from Midland Funding and Midland Credit, and rebuttal from Mr. Mostofi, focusing particularly on the *res judicata* and collateral estoppel effects of the judgment in the collection case. Ultimately, the court held that to the extent Mr. Mostofi stated claims,[3] they were barred:

> [A]pplying the relevant Maryland standard, I am persuaded of two things. One[:] the matters that [Mr. Mostofi] in this case seeks to relitigate [were] either actually raised or should have been raised in the [the collection case], and whether respectfully the decisions [the court] made were correct or incorrect—I don't need to analyze that. What I need to analyze is, and I have, what was presented to [the court] and what [it] decided. That [it] issued a judgment which is now final by virtue of the fact that no timely petition was filed to the Court of Appeals for writ of certiorari. In addition to that, having reviewed the case law by my federal colleagues—Judge Day, the Fourth Circuit, and other magistrate judge opinions—

---

[3] The Court did not elaborate as to which rationale supported the dismissal of which arguments. Because we hold that Mr. Mostofi's claims are barred by *res judicata* and collateral estoppel, we do not reach the question of whether or not he has stated a claim for which relief may be granted, except to the extent we examine his reference to *Bock v. Pressler & Pressler*, 30 F.Supp.3d 283 (D.N.J. 2014), below.

I choose to agree with their reasoning about what one has to plead in terms of the elements of the claims of the federal statute or statutes at issue.

. . . So for those reasons, plus the reasons set out largely by Midland in their papers and as supplemented by counsel's argument, Madam [Clerk], the Motion is granted. The Second Amended Complaint is dismissed with prejudice and without leave to amend.

Mr. Mostofi filed a timely notice of appeal.

## II. DISCUSSION

Mr. Mostofi raises four questions for our review:

1. Did the Circuit Court err in dismissing [Mr. Mostofi's] claim for declaratory relief seeking to collaterally attack a void judgment entered by another court, which lacked subject-matter jurisdiction at the time it entered its judgment, and acted in a manner inconsistent with due process?

2. Did the Circuit Court err in dismissing [Mr. Mostofi's] claim for violations of the [FDCPA], the Maryland Consumer Debt Collection Act and the Maryland Consumer Protection Act, arising out of Appellees' conduct in an underlying debt collection action, based on the doctrines of *res judicata* and claim preclusion, when under Maryland law [Mr. Mostofi] was not required to litigate his statutory claims as counter claims in the underlying collection action?

3. Did the Circuit Court err in dismissing [Mr. Mostofi's] Complaint for failing to state a claim upon which relief can be granted for violations of the [FDCPA], the Maryland Consumer Debt Collection Act and the Maryland Consumer Protection Act when [Mr. Mostofi's] operative Complaint alleged, *inter alia*, that Appellees brought an improper debt collection action against [Mr. Mostofi], while they knew they did not own the alleged debt, and in addition intentionally misstated and inflated the principal amount of the debt?

6

4. Did the Circuit Court abuse its discretion by dismissing [Mr. Mostofi's] Complaint against Appellee Lyons pursuant to Md. Rule 2-507(b) when the case had been improperly removed to a federal court and subsequently remanded, [Mr. Mostofi] had diligently made attempts to effectuate service, Appellee Lyons had not been prejudiced, and dismissal of his claims prevents [Mr. Mostofi] from re-filing the complaint as the statute of limitations expired shortly after [Mr. Mostofi] filed his initial Complaint?

Mr. Mostofi argues that the judgment entered against him in the collection case was a void judgment subject to collateral attack, and therefore is not barred by principles of *res judicata*, because Midland Funding was never assigned his debt and lacked standing to collect or sue on it. He further argues that the appellees are, in fact, liable under the FDCPA and the parallel state statutes, and that he was not compelled to litigate his claims as compulsory counterclaims under Maryland law. And although Mr. Mostofi does not concede that he failed to effect service on Lyons, he argues that if he had, the circuit court abused its discretion by dismissing the case against the firm.

Midland Funding and Midland Credit argue that *res judicata* and collateral estoppel barred Mr. Mostofi's claims, and dismissal was proper. They argue in the alternative that the circuit court properly dismissed the Second Amended Complaint because Mr. Mostofi had failed to state a claim for which relief may have been granted. Finally, Lyons simply argues that it was not served.

We review the circuit court's decisions *de novo*:

> In reviewing a lower court's ruling on a motion to dismiss, we must determine whether the court was "legally correct." We accept all well-pled facts in the complaint, and reasonable

7

inferences drawn from them, in a light most favorable to the
nonmoving party. We also interpret Maryland case law to
review whether the lower courts' conclusions were correct as
a matter of law.

*Cochran v. Griffith Energy Services, Inc.*, 426 Md. 134, 139 (2012) (internal quotation
marks and citations omitted). We may affirm even if a trial court has not provided the
preferred legal conclusions for the result:

> [A]n appellate court will affirm a circuit court's judgment on
> any ground adequately shown by the record, even one upon
> which the circuit court has not relied or one the parties have
> not raised. Therefore, it is within our province to affirm the
> trial court if it reached the right result for the wrong reasons.

*Monarc Const., Inc. v. Aris Corp.*, 188 Md. App. 377, 385 (2009) (quoting *Pope v. Board
of Sch. Comm'rs*, 106 Md. App. 578, 591 (1995) (citation omitted)).

We note at the outset that Mr. Mostofi's claims reach us in a rare posture: there are
no findings of fact for us to review, but the collection case was fully litigated and the time
for appeal has passed. The findings of fact in *that* case do not exist in a vacuum. We must
determine what bearing they have on Mr. Mostofi's present case, and ultimately, whether
principles of *res judicata* or collateral estoppel bar this case based on the result of the
collection case. Together, they do.

### A. *Res Judicata* Bars Mr. Mostofi's Collateral Attack on His Debt.

*Res judicata* and collateral estoppel are also known by their more descriptive names:
claim preclusion and issue preclusion. Claim preclusion means a party can no longer bring
a claim because

8

> a judgment between the same parties and their privies is a final bar to any other suit upon the same cause of action, and is conclusive, not only as to all matters that have been decided in the original suit, but as to all matters which with propriety could have been litigated in the first suit.

*Lizzi v. Wash. Metro. Transit Authority*, 384 Md. 199, 207 (2004) (quoting *Alvey v. Alvey*, 225 Md. 386, 390 (1961)).  Issue preclusion means that if a previous case took place between the same parties or their privies, and the fact-finder made a finding that was "essential to" the judgment entered, all future cases between those parties are stuck with that finding and cannot re-litigate the question.  *Welsh v. Gerber Products, Inc.*, 315 Md. 510, 516 (1989).  In sum, claim preclusion bars litigation of *claims*, whereas issue preclusion generally bars re-litigation of *facts*.[4]  These two doctrines serve the same judicial policy: "that the losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on issues raised, or that should have been raised."  *Colandrea v. Wilde Lake Community Ass'n, Inc.*, 361 Md. 371 (2000).

When a party is sued, and that party could bring a permissive counterclaim, he or she is not *required* to "raise or waive" that counterclaim unless successful prosecution of it would *nullify* the other party's claim:

> (1) Where the defendant *may* interpose a claim as a counterclaim but he fails to do so, he is *not* thereby precluded from subsequently maintaining an action on that claim, except as stated in Subsection (2).

---

[4] This is an oversimplification—issue preclusion can bar re-litigation of legal conclusions as well.  We need not dive deeper into the murky interstices for the purposes of this case, though.

(2) A defendant who may interpose a claim as a counterclaim in an action but fails to do so *is* precluded, after the rendition of judgment in that action, from maintaining an action on the claim if:

   (a) The counterclaim is *required* to be interposed by a compulsory counterclaim statute or rule of court, or

   (b) The relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action.

*Rowland v. Harrison*, 320 Md. 223, 232 (1990) (quoting Restatement 2d of Judgments (1982) (Emphasis in original)). *Rowland* involved a veterinarian who sued to collect unpaid fees. *Id*. at 225-26. Ms. Rowland, the pet owner, claimed that Dr. Harrison had provided negligent care, and initially intended to raise his negligence as both a defense and a counterclaim. *Id*. However, Ms. Rowland ultimately asked the trial court to dismiss her counterclaim without prejudice because she could not gather the necessary evidence or expert testimony to pursue it fully in time for the debt collection action. *Id*. at 226-27. The trial court agreed, and granted Ms. Rowland's motion. *Id*. at 227. But when she re-filed her negligence claim in a new complaint, the trial court granted summary judgment against her on claim preclusion/*res judicata* grounds. *Id*. at 227-28.

The Court of Appeals reversed. Deciding as a matter of law that the "issue of negligence was [n]either litigated [n]or determined by [the trial court] in the debt action,"[5] the Court held that the trial court "was in error when [it] concluded that the Maryland counterclaim rule is compulsory and required that [Ms. Rowland] assert her malpractice claim in Harrison's debt action or lose her right to litigate that matter under the doctrine of res judicata." *Id.* at 230-31. Rather, the Court held that Maryland Rule 2-331, "Maryland's counterclaim rule, by its plain terms, is permissive and not mandatory."[6] *Id.* at 233. The Court, adopting the Restatement 2d of Judgments' approach, held that a subsequent counterclaim is precluded only where the claim "would nullify the initial judgment or would impair rights established in the initial judgment." *Id.* at 236. Alternately quoting and paraphrasing comment f of §22(2)(b) of the Restatement, the Court explained that

> Comment *f* gives examples of subsequent judgments which would nullify previous judgments such as "allowing the

---

[5] Even though Ms. Rowland had raised negligence as a defense in the debt collection action, the Court held that there was no evidence in the record before it that the trial court had made any determinations regarding the defense. *Rowland*, 320 Md. at 230.

[6] Maryland Rule 2-331 reads:

> A party may assert as a counterclaim any claim that party has against any opposing party, whether or not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim. A counterclaim may or may not diminish or defeat the recovery sought by the opposing party. It may claim relief exceeding in amount or different in kind from that sought in the pleading of the opposing party.

Md. Rule 2-331(a).

11

defendant to enjoin enforcement of the [previous] judgment, or to recover on a restitution theory the amount paid pursuant to the judgment (see Illustration 9), or by depriving the plaintiff in the first action of property rights vested in him under the first judgment (see Illustration 10)." Illustration 2, which refers to comment *f,* recognizes that after receiving a default judgment against a patient for medical services rendered, the patient may subsequently maintain a malpractice action, but "is precluded . . . from seeking restitution of any amount paid pursuant to the [previous] judgment."

*Id.* at 237. The Court observed that "[w]ere Rowland to successfully prosecute her malpractice action against Harrison, she would be entitled to whatever amount of damages are determined, but could not recover the fees paid for the treatment of the horse." *Id.* The Court held, therefore, that Dr. Harrison's debt collection action did not bar Ms. Rowland's subsequent malpractice action. *Id.*

### 1. *Res Judicata* Bars Collateral Attack on the Underlying Judgment.

Mr. Mostofi's first contention on appeal is that the judgment in the collection case is void because the debt at issue was owned by Washington Mutual, and although Midland Funding claimed that it purchased his debt from Chase, Midland Funding lacked standing to sue him. Because Mr. Mostofi's explicit purpose for making this argument is to render the collection case's judgment a nullity, he is on the wrong side of *Rowland*. He cites extensively from our opinion in *Finch v. LVNV Funding LLC*, 212 Md. App. 748 (2013), arguing that a void judgment "may be assailed at all times," and "[i]t does not constitute *res judicata*." But *Finch* is inapposite—unlike that one, this judgment is not void.

*Finch* concerned an unlicensed debt collector, LVNV. *Id.* at 752-753. LVNV had purchased the debts of Finch, and co-appellant Dorsey, by assignment. *Id.* at 752. LVNV won *uncontested* default judgments against both appellants at the district court. *Id.* Later, Finch and Dorsey filed a putative class-action against LVNV, and sought, among other things, to attack the judgments against them. *Id.* at 752-53. The circuit court dismissed the action, *id.* at 753, but we reversed, holding that a collection action on behalf of an unlicensed collector is akin to a judgment won by an unlicensed attorney and, therefore, void. *Finch*, 212 Md. App. at 761 ("Much like a complaint filed by a non-lawyer, a complaint filed by an unregistered collection agency is a nullity, and any judgment entered on such a complaint is void." (internal quotation marks and citation omitted)).

This case is different. While we did hold in *Tucker v. Tucker*, 35 Md. App. 710 (1977), that "a judgment is void unless the court which renders it has jurisdiction over the parties or the property," we went on to hold that *res judicata* can preclude a collateral attack on jurisdictional grounds:

> Although a judgment would otherwise be void because of the lack of jurisdiction of the court over the parties or over the subject matter, and would therefore be open to collateral attack, [] if the court determines that it has jurisdiction, the parties may be precluded from collaterally attacking the judgment on the ground that the determination by the court of its jurisdiction is res judicata between them.

*Id.* at 712-13 (quoting Restatement of Judgments §5(j) (1942)). We then cited from the Court of Appeals' decision in *Messall v. Merlands Club, Inc.*:

13

> We might also point out that it seems to be well established that where the issue of jurisdiction is raised and determined in favor of the jurisdiction, the ensuing judgment on the merits is not open to later collateral attack on the jurisdictional issue, whether or not the determination therein was erroneous.

*Id.* at 713 (quoting 244 Md. 18, 36 (1966)).

Unlike in *Finch*, where the appellants collaterally attacked judgments that had been uncontested, Mr. Mostofi concedes in his brief that he raised his lack of standing argument in the collection case:

> Because Chase did not own the debt and lacked the power to assign it Midland Funding was not the legal holder of the alleged debt. As such, Midland Funding did not have standing to sue [Mr.] Mostofi and the trial [court] did not have subject-matter jurisdiction to enter judgment in the underlying debt collection action.
>
> During trial in the debt collection action [Mr.] Mostofi produced evidence supporting his position that Chase did not have the power to assign the alleged debt to Midland Funding because Chase was not an assignee of the debt.

The transcript from the circuit court also bears this out—Mr. Mostofi handed the court Washington Mutual statements bearing his account number, and argued that Midland Funding had failed to prove chain of custody.

The trial court ruled against Mr. Mostofi, and found for Midland Funding on the ownership point. Having failed to convince one trial court that jurisdiction was a problem, and having failed to appeal, Mr. Mostofi does not get another bite at the apple, even if we

14

were to assume that he was right (and we do not) about who owned his debt. His collateral attack on the underlying debt judgment, then, is barred under *res judicata*.[7]

### 2. *Res Judicata* Does Not Bar the FDCPA and Maryland Statutory Claims.

The collection case judgment does not, however, share the same congruence with the statutory claims in this case. The FDCPA bars "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §1692e. It also creates an independent statutory remedy for aggrieved debtors. 15 U.S.C. §1692k. That remedy is not limited, nor is it technically tied in any way, to the alleged debt:

> Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—
>
> > **(1)** any actual damage sustained by such person as a result of such failure;

---

[7] We note also that Mr. Mostofi challenges the validity of the collection case judgment by renewing his argument that he should have been granted the opportunity to cross-examine Midland Funding's affiants in small claims court. In support, he cites *Director of Patuxent Institution v. Daniels*, 243 Md. 16 (1966), and *Ross v. Mr. Lucky, LLC*, 189 Md. App. 511 (2009). *Daniels* held that the Due Process rights of a party facing civil commitment were *not* violated when he was denied the opportunity to cross-examine a declarant in court. 243 Md. at 45-46. *Ross*, on the other hand, affirmed a nearly 50-year-old precedent that administrative agencies performing an adjudicatory function must "afford[] interested parties a reasonable right to cross-examine witnesses" in such proceedings. 189 Md. App. at 522. But neither of these cases, nor any other authority that we have found, required the district court in the collection case—a small claims proceeding to which the rules of evidence do not apply, Md. Rule 3-701—to compel Midland Funding to bring its affiants for cross-examination or entitled Mr. Mostofi to cross-examine them.

**(2)(A)** in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or

**(B)** in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; and

**(3)** in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.

*Id.*

The Maryland Consumer Debt Collection Act bars a debt collector from, among other things, "claim[ing], attempt[ing], or threaten[ing] to enforce a right with knowledge that the right does not exist." Md. Code (1975, 2013 Repl. Vol.), §14-202 of the Commercial Law Article ("CL"). It, too, creates a statutory remedy for victims. *See* CL §14-203 ("A collector who violates any provision of this subtitle is liable for any damages proximately caused by the violation, including damages for emotional distress or mental anguish."). Finally, the Maryland Consumer Protection Act bars any "false, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or

16

misleading consumers," and any "failure to state a material fact if the failure deceives or tends to deceive." CL §13-301. It also creates a statutory remedy for victims. *See* CL §13-408 ("any person may bring an action to recover for injury or loss sustained by him as the result of a practice prohibited by this title.").

As Mr. Mostofi argues, a claim for a violation of the FDCPA is not necessarily a claim that the underlying debt being collected does not exist or has been misrepresented. *See Senftle v. Landau*, 390 F.Supp.2d 463, 469-70 (D. Md. 2005) ("When a[n] FDCPA claim concerns collection activities, a[n] FDCPA claim does not arise out of the transaction creating the debt. Indeed, even if the Circuit Court correctly determined that the underlying debt was valid, Maryland rules of res judicata would not preclude [a consumer] from later seeking damages against creditors for illegally collecting that debt." (citations omitted)). Therefore, FDCPA claims are not necessarily barred by the doctrine of *res judicata*/claim preclusion if they are not asserted, because they do not attack a debt collection judgment *per se*. We have held that the same reasoning is applicable to the Maryland Consumer Debt Collection Act, *see McKlveen v. Monika Courts Condominium*, 208 Md. App. 369, 382-83 (2012), and there is no relevant difference for the Consumer Protection Act.

When a party tries to use one of these statutes to attack a judgment against him or her collaterally, however, *res judicata*/claim preclusion normally bars the attack. *See Green v. Ford Motor Credit Co.*, 152 Md. App. 32 (2003) (holding that while "collection practices prohibited by the FDCPA have no effect on whether a debt is owed," a claim under the concurrent state statutes seeking to *nullify* a prior judgment was barred under *res*

17

*judicata*). Mr. Mostofi claims that this is not such a case, and that "[t]he only relief requested by [him] is the award of statutory and actual damages, costs and attorney's fees, if any." We have our doubts, given Mr. Mostofi's reference in his brief to the judgment against him as "void." But assuming, without deciding, that his use (as an unrepresented litigant) of the word "void" was not meant to conflate his (barred) claims about the underlying debt with his FDCPA claims, Mr. Mostofi's FDCPA and related claims would not be defeated by *res judicata*, and Midland Funding and Midland Credit's citations to *Green* are unavailing.

**B.      Mr. Mostofi's FDCPA and State Claims Against Midland Funding and Midland Credit Were Properly Dismissed With Prejudice Under Collateral Estoppel.**

The foregoing stretch doesn't help Mr. Mostofi for long, however: his FDCPA claims, and all others with respect to Midland Funding and Midland Credit, are defeated by the parallel doctrine of issue preclusion/collateral estoppel, which bars re-litigation of *facts*. "[W]hen [an] issue of fact . . . is actually litigated and determined by a valid final judgment, and that determination is essential to the judgment, the determination is conclusive in a later action between the parties, whether the same or different claim is asserted." *Colandrea*, 361 Md. at 391 (quoting *Potomac Design, Inc. v. Eurocal Trading, Inc.*, F.Supp.364 (D. Md. 1993)). We recently affirmed a four-part test to determine whether or not issue preclusion would apply to previously litigated facts:

> 1.  Was there a final judgment on the merits in the prior litigation?

18

2. Was the party against whom the plea is asserted a party or in privity with the party to the prior adjudication?

3. Was the issue decided in the prior litigation identical with the issue presented in the subsequent litigation?

4. Was the issue actually litigated essential to the judgment in the prior action?

*GAB Enterprises, Inc. v. Rocky Gorge Development, LLC*, 221 Md. App. 171, 187 (2015).

Mr. Mostofi's FDCPA and related claims—while asserted for the first time at trial in this case as opposed to the collection case—are all predicated on allegations decided *against him* in the collection case. Mr. Mostofi claims, for example, that Midland Funding misrepresented the amount of debt he owes, and that Midland Funding was never assigned the debt in the first place. But in the collection case, the court entered a judgment for Midland Funding and against Mr. Mostofi for a sum certain, despite the fact that Mr. Mostofi disputed Midland Funding's ownership of the debt. In so doing, the court satisfied all four *GAB Enterprises* prongs for the debt amount, and whether Midland Funding owned it, and Mr. Mostofi is precluded from re-litigating these issues.

The only other allegation upon which Mr. Mostofi bases his FDCPA and related state claims is his assertion that counsel for Midland in the collection case "could not establish that a meaningful review of [Mr.] Mostofi's file occurred before filing suit." He proffers that "the operative complaint alleges that [counsel] also signed thousands of other complaints filed the same month as the complaint filed against [Mr.] Mostofi."

19

Mr. Mostofi ascribes significance to this allegation based on his interpretation of a single case from the District of New Jersey, which has since been appealed to the Third Circuit, *Bock v. Pressler & Pressler*, 30 F.Supp.3d 283 (D.N.J. 2014). In *Bock*, a law firm generated complaints for debt collection actions in a manner that "almost entirely involve[d] automation and non-attorney personnel." *Id.* at 287. The attorney of record in Mr. Bock's collection action conceded that he reviewed the complaint he filed against Bock for "no more than four seconds," and that Bock's complaint was one of 673 he reviewed that day. *Id.* at 305. In a case of first impression, the District of New Jersey held that it was a violation of the FDCPA to file a complaint under these circumstances, because such a filing implied meaningful attorney involvement when there was none. *Id.* at 306.

We have not adopted the reading of the FDCPA advanced in *Bock*, and we decline to do so today. But even if we had, Mr. Mostofi's allegations, taken as true, do not save his FDCPA claim, nor his state claims. The sum total of Mr. Mostofi's allegations about counsel for Midland Funding that have not already been precluded is his unsupported assertion that "[Counsel] signed thousands of other complaints filed the same month as the complaint filed against [Mr.] Mostofi." This is not conclusive of the question of meaningful attorney involvement. Counsel for Midland Funding could have worked every day that month at twelve hours a day, and turned out 2000 complaints, giving him a full eleven minutes per complaint on average, compared to *Bock*'s four seconds. Counsel could have short-shrifted every other complaint filed that month and spent hours working on Mr. Mostofi's, and that would still be consistent with the facts Mr. Mostofi has alleged. On a

20

*Bock* theory—which again, we have not adopted—it is still Mr. Mostofi's burden to allege actual facts that, if believed, would demonstrate a lack of meaningful attorney involvement in his case. Md. Rule 2-305 ("A pleading that sets forth a claim for relief . . . shall contain a clear statement of the facts *necessary to constitute a cause of action.*"). He has failed to do so. And this case is hardly rocket science—the appellees alleged, and proved in the collection case, that they acquired a credit-card debt that remained unpaid, and it did not require complicated pleadings or cutting-edge research to prepare the case for filing or trial.

Given that issue preclusion has barred the only potentially viable allegations against Lyons, Mr. Mostofi's contentions regarding dismissal for failure to serve are moot. He is barred from asserting his FDCPA and related state claims on the bases he has chosen, and dismissal with prejudice was proper.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

21