Circuit Court for Montgomery County
Case No. 413367V

**REPORTED**

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 00818

September Term, 2016

CHANDRA ANAND, et al.

v.

LAURA H. G. O'SULLIVAN, et al.,
SUBSTITUTE TRUSTEES

Meredith,
Beachley,
Zarnoch, Robert A.
    (Senior Judge, Specially Assigned),

JJ.

Opinion by Meredith, J.

Filed:  August 30, 2017

In January 2007, Chandra and Renu Anand (the "Anands"), appellants, refinanced the indebtedness they owed on their home by borrowing funds from Saxon Home Mortgage ("Saxon"). Saxon advanced total funds of $729,100, of which $500,000 was evidenced by a promissory note secured by a first lien deed of trust on the Anands' property. Saxon subsequently transferred the first lien deed of trust note to Deutsche Bank National Trust Company ("Deutsche Bank"), as trustee for Saxon Asset Securities Trust 2007-2.

In August 2008, the Anands defaulted on their loans from Saxon. Following the default, in an effort to avoid a foreclosure sale of their property, the Anands litigated in several proceedings, including cases with Saxon, Deutsche Bank, the previous substitute trustees, and the current substitute trustees, as well as other parties not involved in this appeal. At various points during their efforts to avoid foreclosure, the Anands alleged that they had rescinded their loans from Saxon pursuant to the federal Truth in Lending Act (sometimes referred to as "TILA"), 15 U.S.C. § 1635, via letters mailed to Saxon on March 4, 2009, and August 19, 2009.

This appeal stems from an order to docket foreclosure of the first lien deed of trust, filed in the Circuit Court for Montgomery County on December 30, 2015, by the current substitute trustees (Laura H.G. O'Sullivan, Erin M. Shaffer, Diana C. Theologou, Chasity Brown, Lauren Bush, and Rachel Kiefer, appellees). Prior to any sale, the Anands moved to dismiss the foreclosure proceedings and sought injunctive relief to prevent further foreclosure efforts, contending that their loans from Saxon had been rescinded in 2009, and that the deed of trust lien was therefore void pursuant to the federal Truth in Lending Act. On April 18, 2016, the circuit court denied the Anands' motions, holding that their claims

of rescission were barred by the doctrine of *res judicata*, and there was no reason to stay the foreclosure. The Anands moved for reconsideration of the circuit court's order, and that motion was denied on June 1, 2016. In the meantime, on May 27, 2016, the Anands filed an *ex parte* motion for a temporary restraining order and a preliminary injunction to prevent the foreclosure sale of their property during their appeal. On June 9, 2016, the circuit court denied the Anands' motion for a preliminary injunction during their appeal.

This appeal followed.

## QUESTIONS PRESENTED

The Anands frame their questions for our review as follows in their brief:

> Whether the Circuit Court committed errors of law and/or clearly erroneous findings of fact in its denial of Defendant's Motion to Dismiss, Motion for Reconsideration of the same, and the Preliminary Injunction aspects of the Ex Parte Motion for Injunctive Relief [and] for Preliminary Injunction for the following reasons:
>
> A. The alleged lender, through the Substitute Trustees, is not entitled to enforce a lien previously rendered void by virtue of Defendants having tendered a notice of rescission under and pursuant to the Federal Truth in Lending Act and Regulation Z and in accordance with *Jesinoski v. Countrywide Home Loans, Inc.*, 135 S.Ct. 790 (2015).
>
> B. The doctrines of *res judicata* and/or collateral estoppel are inapplicable so as to give preclusive effect to any argument that the lien imposed by virtue of a Deed of Trust has been rendered irremediably void.

Because we agree with the circuit court's conclusion that the Anands' present claims relative to rescission are barred by the doctrine of *res judicata*, we affirm the judgments of the Circuit Court for Montgomery County.

2

**FACTUAL & PROCEDURAL BACKGROUND**

On January 24, 1996, Chandra Anand acquired real property located at 19909 Knollcross Drive, Germantown, Maryland 20876 (the "Property"), for $308,600. On April 8, 1997, Chandra Anand conveyed his interest in the Property to himself and his wife, Renu Anand, as tenants by the entireties. The Anands have held title to the Property as tenants by the entireties since that time.

On January 24, 2007, the Anands refinanced the debt they owed on the Property by borrowing $729,100 from Saxon Home Mortgage, evidenced, in part, by a $500,000 promissory note that was secured by a first lien deed of trust. As part of the refinancing transaction, the Anands also entered into a second mortgage with Saxon in the amount of $182,100, and received $47,000 cash. Only the first lien deed of trust is at issue in this appeal. Saxon subsequently transferred the first lien deed of trust note to Deutsche Bank, as trustee for Saxon Asset Securities Trust 2007-2.

In August 2008, the Anands defaulted on their loans.

On December 30, 2008, in an effort to have the lien on the Property adjudicated to be unenforceable, the Anands filed suit in the Circuit Court for Montgomery County against Deutsche Bank, Saxon, and the predecessor substitute trustees, asserting causes of action for negligence, federal Truth in Lending Act violations, and mortgage fraud. On January 20, 2009, while the Anands' first suit was pending, the predecessor substitute trustees initiated foreclosure proceedings against the Property by filing an order to docket foreclosure pursuant to the first deed of trust.

On March 4, 2009, Chandra Anand mailed Saxon a document captioned "Actual Notice to Rescind; Request for Accounting, Notice Pursuant to R.E.S.P.A."  In the notice purporting to rescind the loans from Saxon, Mr. Anand asserted that he had not been provided certain disclosures required under TILA and Regulation Z -- the regulations promulgated pursuant to TILA -- and stated in part:

> I have conducted a reasonable investigation and inquiry into this matter and concluded that SAXON MORTGAGE, INC., the originator of this transaction, provided one "acknowledge receipt of two copies of NOTICE OF RIGHT TO CANCEL" and said document is patently false. . . . The failure to provide all material disclosures correctly made as that term is defined and under 15 U.S.C. § 1635(a); Reg. Z §§ 226.23(a) in a form that I may keep subjects this transaction to the unconditional right to rescind within three days which has not yet begun to run due to your failure to provide accurate notices of my right to cancel.

On April 2, 2009, Saxon responded to Mr. Anand's March 4 notice to rescind. Saxon asserted that the notice did not constitute a "Qualified Written Request" under the Real Estate Settlement Procedures Act, and that Saxon was not obligated to respond to the notice.  Nevertheless, Saxon responded to some of the requests made in Mr. Anand's letter for additional information, and also stated: "Our review of your account indicates that the servicing of your mortgage loan has been entirely lawful and appropriate."  But Saxon's letter did not specifically address Mr. Anand's allegation regarding Saxon's failure to provide the Anands with all required disclosures outlining their right to rescind their loans under TILA.

On August 19, 2009, the Anands sent Saxon a second notice to rescind their loans. In their second notice to rescind, the Anands did not expressly contend that Saxon's failure to supply the notices required by TILA provided the basis for rescinding their loans, as the

4

Anands had contended in their first notice to rescind. Rather, in their second notice to rescind, the Anands asserted grounds not previously outlined in their first notice as the basis for rescinding their loans from Saxon, stating in relevant part:

> We hereby exercise our right to rescind the loan transaction in its entirety under the three day rule, the three year limitation, and under the usury and general claims theories and causes of action. By failing to disclose the true lender and using subterfuge to hide the fact that the "lender" at closing was paid to pose as the lender when in fact an undisclosed unregistered third party had rented the charter or lending license of the "lender,["] the limitation on our rights to rescind was extended indefinitely. Under state and federal law, the mortgage is now extinguished and your rights under the trustee deed have terminated. We hereby rescind the above referenced loan and/or declare it to be *Null and Void* and demand treble damages for the face value of the note, on the grounds set forth below . . . .

(Bold emphasis and all-caps omitted.) The letter summarily set forth five "grounds" in paragraphs labeled: 1. Appraisal Fraud; 2. Fraud in the inducement; 3. Fraud in the execution; 4. Usury; and 5. PAYMENT.

On April 22, 2010, the circuit court granted a motion to dismiss the Anands' first suit against Deutsche Bank, Saxon, and the predecessor substitute trustees, with prejudice. That judgment was not appealed by the Anands.

The Property was scheduled to be sold at auction on June 16, 2010. But, on June 10, 2010, the Anands filed a second suit against Deutsche Bank, Saxon, and the predecessor substitute trustees, asserting negligence claims against Saxon, and mortgage fraud claims against all the defendants, in addition to seeking declaratory and injunctive relief to prevent the foreclosure sale of the Property. The Anands' second suit did not include claims under TILA or contend that the loans from Saxon had previously been rescinded.

On June 14, 2010, two days prior to the scheduled foreclosure sale of the Property, Mr. Anand filed an *ex parte* motion for a temporary restraining order to prevent the foreclosure sale. On June 15, 2010, the circuit court determined that it would treat the motion as one for a preliminary injunction, and scheduled a hearing on the matter. As a result, the foreclosure sale did not occur on June 16, 2010, as scheduled. Following a hearing, during which Mr. Anand's counsel conceded that, in the Amands' second suit, the claims against Saxon for negligence and mortgage fraud were barred by the dismissal with prejudice of the Anands' first suit, the court ruled that it would grant Saxon's motion requesting that Saxon be dismissed. Further, with respect to Deutsche Bank and the then substitute trustees, the court ruled that "all of those matters which were or could have been litigated in that case [*i.e.*, the Anands' first suit] are barred by the doctrine of res []judicata, that is to say, claim preclusion in the words of the Restatement (Second) of Judgments." The court denied the motion for a preliminary injunction. Mr. Anand appealed the circuit court's denial of the motion.

On October 31, 2011, Renu Anand individually filed a voluntary petition for bankruptcy under Chapter 7 of Title 11 of the United States Code. Ms. Anand's bankruptcy petition did not dispute the validity of the lien on the Property or assert that it had been rescinded. As a result of Ms. Anand's bankruptcy petition, however, the foreclosure proceedings were dismissed by the predecessor substitute trustees.

On April 3, 2012, this Court filed an unreported opinion in which we affirmed the circuit court's denial of the Anands' motion for a temporary restraining order and preliminary injunction. *See Chandra Anand v. Deutsche Bank National Trust Company,*

6

*etc., et al.*, No. 1871, Sept. Term 2010, slip op. at 11 (filed April 3, 2012) (hereinafter referred to as "*Chandra Anand I*"). The Anands thereafter voluntarily dismissed their second suit on February 13, 2013.

But, in February 2013, the Anands also filed a third suit in the Circuit Court for Montgomery County regarding the Saxon loans. That suit eventually made its way to the United States Court of Appeals for the Fourth Circuit, which described the procedural history of that suit as follows:

> In February 2013, the Anands brought a quiet title action in the Circuit Court for Montgomery County, Maryland. They sought a declaration that Ocwen [the loan servicer] and Deutsche Bank no longer [held] any interest in their home, and an order requiring Ocwen and Deutsche Bank to release their liens and barring them from foreclosing on the property. This relief was justified, the Anands argued, because the alleged [mortgage] insurance payments [that the Anands assumed had been paid to Deutsche Bank and Ocwen] triggered the release provisions of the Deed of Trust, transferring their home's title back to [the Anands].
>
> Invoking diversity jurisdiction, Deutsche Bank and Ocwen removed the case to the United States District Court for the District of Maryland and moved to dismiss the Anands' complaint for failure to state a claim upon which relief can be granted. 28 U.S.C. § 1332; Fed. R. Civ. Pro. 12(b)(6). The district court granted the motion and dismissed the Anands' complaint with prejudice. This appeal followed.

*Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 197 (4th Cir. 2014).

After the United States District Court dismissed the Anands' complaint with prejudice, *id.*, the Anands appealed. On June 6, 2014, the Court of Appeals for the Fourth Circuit affirmed the district court's dismissal of the Anands' quiet title action with prejudice. *Id.* at 200.

7

In December 2015, Deutsche Bank appointed new substitute trustees (namely, appellees Laura H.G. O'Sullivan, Erin M. Shaffer, Diana C. Theologou, Chasity Brown, Lauren Bush, and Rachel Kiefer). On December 30, 2015, the newly appointed substitute trustees filed yet another order to docket foreclosure in the Circuit Court for Montgomery County, thereby initiating the case that led to the present appeal.

On February 25, 2016, the Anands filed a "Motion to Dismiss, For Injunctive Relief and For Sanctions," asking the court to dismiss the foreclosure action and issue an injunction to prevent any further foreclosure attempts by the substitute trustees. In support of their motion, the Anands contended that their loans from Saxon had been rescinded on March 4, 2009, and/or August 19, 2009, and that a foreclosure could not occur on a "nonexistent lien." The Anands asserted: "Immediately upon notification unto Saxon of their rescission of the subject loan, the lien imposed against the Property became null and void and [the Anands] were not liable for any amount under and/or pursuant to the loan, including any finance charge. 12 C.F.R. § 226.23(d)(1) (2006)." (Footnote omitted.)

On April 13, 2016, the circuit court denied the Anands' motion. The circuit court held that the Anands' rescission arguments were precluded because the Anands had failed to prevail upon these arguments pertaining to TILA and rescission in prior litigation in which they had unsuccessfully challenged the validity of the first deed of trust lien on the Property. The circuit court explained its holding as follows:

> In assessing this case, the Court does think that the [Anands are] basically asking for a windfall. The [Anands are] hoping to have the Court make a decision that allows them to walk away with this property unless and until [appellees come] after them to get their property back or for the money that supposedly is on the table as a result of this rescission.

8

By my count, there have been four separate cases involving these parties here in the Circuit Court, and that doesn't count the case that took place in Federal District Court. There have been two [sets of] substitute trustees in this case, but the substitute trustees in these cases have all been acting on behalf of Deutsche Bank, which is the lender in this particular case. . . . While there's Saxon named as the trustee for Deutsche Bank, and there are several other defendants in this case, it still revolves around the lien or the note that Deutsche Bank holds. And every single trustee in this matter and **in every single case, it's revolved around this concept of the existence of this lien and having the Anands be either paying for their property or being eventually foreclosed upon**.

So the Court will note that **in every single one of these cases, the Anands recognize the existence of this lien, and that holds true for the cases that have taken place after their notice of rescission, which was in March of 2009.** And that's also true in the bankruptcy case. They have recognized that there was a lien and that Deutsche Bank was the holder of the lien from Saxon or whomever.

So **the Court does find that these are the same parties, these are the same issues**, again, the lender's ability to hold the defendant[s] liable on this lien for this property. Now, when I looked specifically at [Case No. CV] 306570V, which is one of the first cases -- it may even be the first case -- titled Chandra Anand versus . . . Deutsche Bank National Trust Company as Trustee for Saxon Asset Securities. . . .

That case was dismissed with prejudice June 11th, 2010, which again, was well after the March 2009 rescission notice. And that's at Docket Entry 95, the dismissal with prejudice. . . .

**[The Anands, in CV 306570V,] allege[d] in Count 2 that the defendants are liable to the [Anands] for failure to give disclosures under TILA.** Again, assuming for the sake of argument that the [Anands were] not given such disclosures, they are barred by the statute of limitations to claim damages, that they have failed to properly rescind the loan, and the [Anands] have failed to establish a factual predicate as to whether the cited sections of regulation Z apply to [their] loans.

So there is a mention in the [CV 306570V] pleadings of rescission. Fast forward to docket entry 69 [in CV 306570V], which is [the Anands'] amended complaint. And I believe it could be like the third or fourth in [CV 306570V]. Number 9, ["]plaintiff's rights, pursuant to these requirements of

9

the Maryland Commercial Code, the deed of trust lien that is a subject of this dispute is unlawful and is voided by the failures, bre[a]ch, and fraud of the defendant from the beginning. Defendant is estopped from enforcement of said and invalid lien, voiding the security interest, and defendant's petition should be denied in this mortgage lien, counted null and void, and expunged from the public land records.["]

**So again, [the Anands have] asserted previously in these pleadings that the lien was not valid, which again is what he's saying here today. And I didn't go through the pleadings for all the other cases, but in this particular case [CV 306570V], it was dismissed with prejudice, which is a final judgment.** And I'll note that the federal case was dismissed with prejudice. And I know that [the Anands' attorney] argued that it was specifically to quiet title, but within a pleading to quiet title, you're basically saying that the party that's owed doesn't have a right to have this lien. So again, the idea of Deutsche [Bank] having a lien, being owed in some way by the Anands, was challenged in Federal District Court, and it was dismissed with prejudice in that case.

**So with respect to [appellees'] argument of issue preclusion, I'm going to agree with [appellees]. I think that one, it was brought up. The issue of rescission was brought up in this initial pleading, and this case went on for two years, [CV] 306570[V]. [The Anands] had the opportunity at that time to show the rescission documentation that has been brought forward here. That argument wasn't made thoroughly at that time, and now it's, at least in this member of the bench's opinion, too late.** So I am going to deny [the Anands'] motion with prejudice. [1]

(Emphasis added.)

---

[1] We note that, in explaining its ruling, the circuit court said that the Anands' claims were barred by "issue" preclusion, which typically refers to collateral estoppel. *See John Crane, Inc. v. Puller*, 169 Md. App. 1, 26 (2006). However, we infer from the overall analysis in the circuit court's oral opinion that the court was addressing the elements of *res judicata*, sometimes referred to as "claim preclusion." Indeed, at a follow-up hearing to address the Anands' request for an injunction pending appeal of the denial of the preliminary injunction, counsel for the appellees said that the previous judge had "denied the motion [for preliminary injunction] on the basis of res judicata." In denying the Anands' request for an injunction pending appeal, the motion judge stated: "res judicata is a big player in this analysis and that . . . is really what Judge Smith based her decision on [in denying the preliminary injunction] . . . ."

The circuit court's order was entered April 18, 2016. On April 25, 2016, the Anands moved for reconsideration of the circuit court's denial of their motion to dismiss and request for injunctive relief. The circuit court denied the Anands' motion for reconsideration on June 1, 2016.

In the meantime, on May 27, 2016, the Anands filed a motion for a temporary restraining order and a preliminary injunction to prevent the foreclosure sale of the Property scheduled for June 1, 2016. On June 9, 2016, following a hearing, the circuit court denied the Anands' motion for an injunction pending an appeal. The motion judge commented that it "would cause sheer havoc in the lending industry" if the Anands' theory for avoiding liability were to prevail.

On July 1, 2016, the Anands noted this appeal.[2]

## DISCUSSION

### A.    Standard of Review

The Anands assert that, in denying their motion to dismiss the foreclosure action, the circuit court committed errors of law by rejecting their arguments as to why the lien on the Property is void, and by ruling that the Anands' claim of rescission is barred by the doctrine of *res judicata*. Appellees note, correctly, that the Court of Appeals said in *Anderson v. Burson*, 424 Md. 232 (2011), that, when an appellate court reviews the grant

---

[2] We note that the Anands' appeal of the circuit court's April 18, 2016, denial of their motion to dismiss and for injunctive relief is timely because the Anands moved within 10 days to alter or amend that judgment on April 25, 2016, tolling the 30 day period for noting an appeal under Maryland Rule 8-202. *See* Rule 8-202(c), and Committee note. The motion for reconsideration was denied on June 1, 2016.

or denial of a motion pursuant to Maryland Rule 14-211 to stay a foreclosure action, the appellate court reviews for abuse of discretion. The *Anderson* Court stated:

> The grant or denial of injunctive relief in a property foreclosure action lies generally within the sound discretion of the trial court. Therefore, we review the trial court's grant or denial of a foreclosure injunction for an abuse of discretion. . . . **We review the trial and intermediate appellate courts' legal conclusions, however, nondeferentially**.

*Id*. at 243 (emphasis added; citations omitted); *accord Burson v. Capps*, 440 Md. 328, 342 (2014).

Because a court does not have discretion to misapply the law, we review the circuit court's rulings of law nondeferentially, even when the rulings are made in the course of deciding a discretionary matter. *Wilson–X v. Department of Human Resources*, 403 Md. 667, 675-76 (2008) ("trial judges do not have discretion to apply inappropriate legal standards, even when making decisions that are regarded as discretionary in nature"); *Ehrlich v. Perez*, 394 Md. 691, 708 (2006) ("[E]ven with respect to a discretionary matter, a trial court must exercise its discretion in accordance with correct legal standards. We review *de novo* a trial judge's decision involving a purely legal question." (Citations and internal quotation marks omitted.)).

**B.    The Anands' Right of Rescission under the Truth in Lending Act and Regulation Z**

The Anands contend that there is currently no valid lien against the Property because they rescinded their loans from Saxon on March 4, 2009, and/or August 19, 2009, when they mailed Saxon two separate notices purporting to rescind their loans. According to the Anands, as soon as a notice of rescission was sent to Saxon, "the lien imposed against the

12

Property became null and void and [the Anands] were not liable for any amount under and/or pursuant to the loan," based upon language in 15 U.S.C. § 1635(b) and 12 C.F.R. § 226.23(d)(1). The TILA provision states, in part: "When an obligor exercises his right to rescind under subsection (a) [of 15 U.S.C. § 1635], . . . any security interest given by the obligor . . . becomes void upon such a rescission." Similarly, Regulation Z states in 12 C.F.R. § 226.23(d)(1): "When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge." The Anands also assert that "the three year right of rescission under TILA and Regulation Z [was] effectuated solely upon [the Anands' mailing of] written notice to [Saxon in 2009] within the three year rescission period," and that, after mailing their notices of rescission, they were not required to take any additional steps in order to effectuate rescission of their loans. Consequently, the Anands contend, the lien of the first deed of trust became "irremediably void" the instant they gave Saxon notice of rescission, and their claims in the present case cannot be barred by *res judicata* because, according to the Anands, a "void lien" can be collaterally attacked at any time.

Appellees respond that 15 U.S.C. § 1635(b) contemplates rescinding a loan transaction and invalidating any security interest only "[w]hen an obligor exercises [the obligor's] *right to rescind under subsection (a)*." 15 U.S.C. § 1635(b) (emphasis added). Appellees assert that, when a borrower simply sends a notice to rescind a loan without a *bona fide* predicate basis or "right to rescind" the loan, the sending of such an unfounded notice does not automatically and immediately invalidate the lien of a loan. And appellees

13

point out that, despite all of the litigation generated by the Anands' efforts to avoid repaying these loans, no court has ever found that the Anands had a legitimate factual basis to rescind the loans.

One of the cases cited by appellees in support of their assertion that a lien does not automatically become void whenever a borrower sends a notice of rescission, without regard to whether the borrower had the right to rescind, is *Yamamoto v. Bank of N.Y.*, 329 F.3d 1167 (9th Cir. 2003), in which the court recognized that the lender must have an opportunity to contest a notice of rescission. The *Yamamoto* court stated, *id.* at 1170:

> [H]ere, [the lender] contested the notice [of rescission] and produced evidence sufficient to create a triable issue of fact about compliance with TILA's disclosure requirements. In these circumstances, it cannot be that the security interest vanishes immediately upon the giving of notice. Otherwise, a borrower could get out from under a secured loan simply by *claiming* TILA violations, whether or not the lender had actually committed any. Rather, under the statute and the regulation, the security interest "becomes void" only when the consumer "rescinds" the transaction. In a contested case, this happens when the right to rescind is determined in the borrower's favor.

The *Yamamoto* court cited several cases in support of its view as to when a lien becomes void under TILA, including *Large v. Conseco Financing Corp.*, 292 F.3d 49 (1st Cir. 2002), which also rejected a borrower's claim that the lien automatically became void when notice of rescission was sent to the lender. The court in *Large* stated, *id.* at 54-55:

> Neither the statute nor the regulation establishes that a borrower's mere assertion of the right of rescission has the automatic effect of voiding the contract. Section 1635(b) states that, "[w]hen an obligor exercises his right to rescind," the creditor's security interest "becomes void." The natural reading of this language is that the security interest becomes void when the obligor exercises a right to rescind that is available in the particular case, either because the creditor acknowledges that the right of rescission is available, or because the appropriate decision maker has so determined. If a lender disputes a borrower's purported right to rescind, the designated

14

decision maker—here an arbitrator—must decide whether the conditions for rescission have been met. Until such decision is made, the [borrowers] have only advanced a claim seeking rescission.

*See also Sherzer v. Homestar Mortg. Services*, 707 F.3d 255, 265 (3d Cir. 2013) (concluding that the lien becomes automatically void, *but only* "when an obligor with a *valid* TILA claim provides the lender with written notice"); *Gilbert v. Residential Funding, LLC*, 678 F.3d 271, 277 (4th Cir. 2012) ("[U]nilateral notification of cancellation does not automatically void the loan contract. [O]therwise, a borrower could get out from under a secured loan simply by claiming TILA violations, whether or not the lender had actually committed any." (Internal quotation marks and citations omitted.)).

Appellees further argue that they were not required to "file a lawsuit to 'negate' the rescission," as the Anands assert appellees were required to do if they disputed the Anands' right to rescind their loans. Appellees assert that the Anands never offered any evidence that they were not provided the disclosures required by 12 C.F.R. § 226.23(b), or any evidence that the disclosures Saxon provided to the Anands were deficient. Appellees argue that, in any event, because of all of the litigation that the Anands have engaged in regarding these loans before asserting the claims of rescission they raised in the present case, the Anands' rescission claims are barred by *res judicata*.

i.      **Brief Legal Background: The Truth in Lending Act and Regulation Z**

Under TILA, a borrower may rescind a consumer loan transaction under certain circumstances, as explained in 15 U.S.C. § 1635(b):

> When an obligor exercises his right to rescind under subsection (a) [of 15 U.S.C. § 1635], he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by

operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

Similarly, 12 C.F.R. § 226.23(a) provides details regarding a borrower's right of rescission:

(a) Consumer's right to rescind.

(1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.

(2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.

(3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures, whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property,

16

> or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act.
>
> (4) When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.

12 C.F.R. § 226.23(a) (footnotes omitted).

Pursuant to the regulations promulgated under TILA, lenders are required to deliver to borrowers two copies of a notice outlining the borrower's right to rescind certain loans. As the United States Court of Appeals for the Third Circuit has explained, "if the lender's notice is proper, the borrower's right to rescind lasts for three days, but the rescission period extends to three years if the required notice and material disclosures . . . are not delivered." *In re Porter*, 961 F.2d 1066, 1073 (3d Cir. 1992) (citing 12 C.F.R. § 226.23(a)(3) and 15 U.S.C. § 1635(f)); *see also Cheche v. Wittstat Title & Escrow Co., LLC*, 723 F. Supp. 2d 851, 855 (E.D. Va. 2010) ("If a creditor fails to comply with the notification requirement contained in the TILA, the statute extends the debtors' right to rescind from three days to three years.").

In *Jesinoski v. Countrywide Home Loans, Inc.*, ___ U.S. ___, 135 S. Ct. 790 (2015), the United States Supreme Court held that "rescission is effected when the borrower notifies the creditor of his intention to rescind. It follows that, so long as the borrower notifies [the creditor] within three years after the transaction is consummated, his rescission is timely. The statute does not also require him to sue within three years." *Id*. at 792.

The Anands contend that the Supreme Court's holding in *Jesinoski* confirms that, because they sent Saxon a notice of rescission within three years after closing on the

refinancing loans, they had unlimited time to rely upon rescission in any litigation with their creditors, and they argue that *Jesinoski* supports their contention that, regardless of whether they had a legitimate basis for rescission, the lien against the Property became void as soon as they gave notice of their demand for rescission via the letters they sent in 2009. They support this argument by quoting 12 C.F.R. 226.23(d)(1), which states: "When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge." Further, they state: "[T]here is no saving provision under TILA or Regulation Z that specifies any situation under which the void lien suddenly re-attains a valid lien status."

Appellees respond: (1) a notice of rescission does not alter the legal rights of the creditor if the borrower does not actually have a legitimate basis to assert a "right of rescission"; and (2) the Anands are barred by *res judicata* from raising this challenge to the first deed of trust lien at this late date.

### ii. *Res Judicata*

Although both parties in this appeal devoted major portions of their briefs in this Court to discussing whether the Anands had a right to rescind their loans under TILA, the circuit court did not actually reach the merits of that issue. Rather, the circuit court held that the Anands' claims about having exercised their right under TILA to rescind their loans from Saxon in 2009 were barred by the doctrine of *res judicata*.

The Court of Appeals has explained that "[t]he doctrine of *res judicata* bars the relitigation of a claim if there is a final judgment in a previous litigation where the parties, the subject matter and causes of action are identical or substantially identical **as to issues**

18

**actually litigated and as to those which could have or should have been raised in the previous litigation**." *Anne Arundel Cty. Bd. of Educ. v. Norville*, 390 Md. 93, 106–07 (2005) (emphasis added). "Under Maryland law, the elements of *res judicata*, or claim preclusion, are: (1) that the parties in the present litigation are the same or in privity with the parties to the earlier dispute; (2) that the claim presented in the current action is identical to the one determined in the prior adjudication; and, (3) that there has been a final judgment on the merits." *Id.* at 107.

The Anands contend that *res judicata* cannot, as a matter of law, apply to a borrower's attempt to rescind a loan under TILA in light of the Supreme Court's holding in *Jesinoski*, *supra*, 135 S.Ct. 798. The Anands argue in their brief that, because *Jesinoski* held that a claim for rescission is timely so long as the borrower gives the lender notice within three years after the loan transaction is consummated, and also held that the borrower is *not* required "to sue within three years" in order to confirm the rescission, *id.* at 792, a borrower therefore has "no obligation to raise and/or enforce their rescission, [and consequently,] . . . cannot suffer from any estoppel and/or preclusive effect pursuant to the doctrines of *res judicata* and/or collateral estoppel from [any delay in] raising the void nature of the pertinent Deed of Trust."

We disagree with the Anands' contention that the preclusive effect of *res judicata* is not applicable. Subsequent to the Supreme Court's decision in *Jesinoski*, courts outside Maryland have held that the doctrine of *res judicata* can indeed bar a borrower's attempt to rescind a loan under TILA. *See, e.g.*, *Pohl v. U.S. Bank for Merrill Lynch First Franklin Mortgage*, 859 F.3d 1226, 1231 (10th Cir. 2017); *In re Guy*, 552 B.R. 89, 98 (Bankr. D.S.C.

19

2016); *see also Beepot v. J.P. Morgan Chase Nat. Corp. Servs., Inc.*, 57 F. Supp. 3d 1358, 1373-74 (M.D. Fla. 2014), *aff'd*, 626 Fed. Appx 935 (11th Cir. 2015).

Nothing in *Jesinoski* alters the common law requirement that, once litigation is initiated by a party, that party must assert all of its claims that pertain to the particular subject matter of that litigation in order to "ensure[] that courts do not waste time adjudicating matters which have been decided or *could have been* decided fully and fairly." *Norville*, *supra*, 390 Md. at 107. Accordingly, *Jesinoski* did not eliminate the possibility for *res judicata* to bar the Anands' present claims regarding rescission of their loans under TILA if the common law elements of the doctrine are met in this case.

> **a.  The Parties in this Litigation are either the same Parties Involved in the Anands' Previous Litigation to Prevent Foreclosure, or are in Privity with Prior Parties**

The first element of *res judicata* is "that the parties in the present litigation are the same or in privity with the parties to the earlier dispute[.]" *Norville*, *supra*, 390 Md. at 107. On December 30, 2008, the Anands filed their first suit against Deutsche Bank, Saxon, and the predecessor substitute trustees. *See Chandra Anand I*, *supra*, slip op. at 1–2. The Anands' suit was dismissed by the circuit court, with prejudice, on April 22, 2010, and no appeal of that judgment was pursued. *Id.*, slip op. at 2–3.

Although the current substitute trustees were not named parties in the first suit initiated by the Anands, we have previously described "privity" in the context of *res judicata* as follows: "[P]arties are in privity when, 'in the advancement of their interest [they] take open and substantial control of its prosecution, or they are so far represented by another that their interests receive actual and efficient protection[. In that circumstance,]

20

any judgment recovered therein is conclusive upon them to the same extent as if they had been formal parties.'" *Poteet v. Sauter*, 136 Md. App. 383, 412 (2001) (quoting *Warner v. German*, 100 Md. App. 512, 519 (1994)) (alterations in original); *see also FWB Bank v. Richman*, 354 Md. 472, 498 (1999) ("'Privity in the *res judicata* sense generally involves a person so identified in interest with another that he represents the same legal right.'") (quoting *Williams v. Stefan*, 133 B.R. 119, 121 (N.D.Ill.1991)).

Here, the current substitute trustees were in privity with the predecessor substitute trustees because there was complete identity of interests, and the current substitute trustees were "'represented by another [such] that their interests receive[d] actual and efficient protection[.]'" *Poteet, supra*, 136 Md. App. at 412 (quoting *Warner, supra*, 100 Md. App. at 519). Both sets of substitute trustees represented the "'same legal right.'" *FWB Bank, supra*, 354 Md. at 498 (quoting *Williams, supra*, 133 B.R. at 121). Therefore, the two sets of substitute trustees were in privity with one another, satisfying the first element of *res judicata*.

        **b.**      **The Claims Presented in this Action are the Same as those Determined in a Prior Adjudication**

The second element of *res judicata* requires "that the claim presented in the current action is identical to the one determined in the prior adjudication[.]" *Norville, supra*, 390 Md. at 107. With respect to this element, the Court of Appeals has explained that, "**if the two claims or theories are based upon the same set of facts** and one would expect them to be tried together ordinarily, **then a party must bring them simultaneously**. **Legal theories may not be divided and presented in piecemeal fashion in order to advance**

21

**them in separate actions.**" *Id*. at 109 (emphasis added). Furthermore, "[a]ll matters which were litigated or *could* have been litigated in the earlier case 'are conclusive in the subsequent proceeding.'" *Id*. (quoting *Mackall v. Zayre Corp.*, 293 Md. 221, 228, 443 A.2d 98, 102 (1982)) (emphasis in original).

Applying the above principles to this case, it is clear that the circuit court did not err in concluding that the Anands' rescission arguments arose from the same nucleus of facts and transactions that were addressed by the judgments entered in the prior cases. In their December 30, 2008, suit against Deutsche Bank, Saxon, and the predecessor substitute trustees, the Anands disputed the validity of the lien on the Property, and asserted causes of action for "negligence, **federal truth in lending violations**, and mortgage fraud." *Chandra Anand I*, *supra*, slip op. at 2 (emphasis added). That suit was dismissed with prejudice by the circuit court on April 22, 2010 – more than a year after the Anands mailed their first notice of rescission on March 4, 2009. All of the TILA claims the Anands attempted to raise in the current case clearly "*could* have been litigated in the" December 30, 2008, suit. *Norville*, *supra*, 390 Md. at 107 (emphasis in original). Even though the Anands were not subject to a three-year *time* limit for seeking to enforce their right of rescission under TILA, *see Jesinoski*, *supra*, 135 S. Ct. at 792, under the principles applicable to claim preclusion, they were nevertheless required to assert all claims that "*could* have been litigated" in a proceeding once they voluntarily initiated suit on December 30, 2008. *Norville*, *supra*, 390 Md. at 107. Accordingly, the circuit court did not err in concluding that the Anands' current TILA claims arose from the same facts as, and

22

could have been asserted in, their December 30, 2008, suit, satisfying the second element of *res judicata*. *Id*.

### c. There was a Final Judgment on the Merits in a Previous Adjudication

The third element of *res judicata* is "that there has been a final judgment on the merits" in a previous adjudication. *Id*. at 107. The Anands' December 30, 2008, suit was dismissed with prejudice by the circuit court on April 22, 2010. That was a "final judgment on the merits." *Id*. at 113-14. As noted above, they did not appeal that judgment.

Citing *Finch v. LVNV Funding, LLC*, 212 Md. App. 748 (2013), the Anands nevertheless contend that *res judicata* cannot bar their present claim of rescission because "[i]t is settled law that a void judgment is not a judgment at all and can be collaterally attacked at any time." According to the Anands, "[t]he void nature of the lien imposed by virtue of the subject Deed of Trust should . . . be capable of attack at anytime . . . without application of the doctrine of *res judicata*."

But the fallacy in this argument is that the Anands are not challenging a void *judgment*. And we agree with the courts that have rejected similar arguments. *See, e.g., Pohl*, *supra*, 859 F.3d at 1230 ("*Jesinoski* does not preclude a lender from taking the position that a tendered notice of rescission is invalid. Nor are we persuaded by the Pohls' suggestion that under *Jesinoski*, a notice of rescission tendered during the conditional rescission period becomes incontestable if a lender fails to bring a lawsuit to invalidate it." (citations and footnote omitted)); *Keiran v. Home Capital, Inc.*, 858 F.3d 1127, 1133 (8th

23

Cir. 2017) (rejecting borrowers' argument that "the bank's security interest is void because the bank failed to adequately and timely respond to their notice of rescission").

In proceedings conducted upon remand from the Supreme Court in *Jesinoski v. Countrywide Home Loans, Inc.*, 196 F.Supp. 3d 956 (D. Minn. 2017), the United States District Court for the District of Minnesota entered a summary judgment dismissing the Jesinoskis' claim for rescission under TILA, despite the fact that the Jesinoskis had given notice of their intent to rescind. The district court held that the Jesinoskis' self-serving assertions of non-delivery of the TILA disclosures "ha[d] not overcome the rebuttable presumption of proper delivery of TILA notices," *id*. at 961, and the court noted that the Jesinoskis admitted that "they d[id] not have the present ability to tender the amount of the loan proceeds" back to the lender. *Id*. The court stated that it "discerns nothing in the Supreme Court's opinion that would override TILA's tender requirement." *Id*. at 962 (citing, *id*. at 961, *Yamamoto*, *supra*, 329 F.3d at 1170, for the proposition that "[r]escission under the TILA is conditioned on repayment of the amounts advanced by the lender").

Making a similar point in *In re Junk*, 566 B.R. 897, 909 (Bankr. E.D. Ohio 2017), the court there observed that "nothing in *Jesinoski* alters the requirement that a plaintiff have the ability to tender the loan proceeds after sending the rescission notice in order to successfully assert a TILA rescission claim."

These cases, which are consistent with our view -- shared by the circuit court in this case -- that the Anands' argument regarding the incontestability of a borrower's notice of rescission would wreak havoc upon the lending industry and real property titles generally,

support our conclusion that the circuit court did not err in holding that the Anands' TILA

claims were barred by the doctrine of *res judicata*.[3]

**JUDGMENTS OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**

---

[3] Although the Anands made reference in the questions presented section of their brief to the circuit court's denial of their *ex parte* motion for injunctive relief and for a preliminary injunction, the Anands provided no substantive argument specifically addressing that motion. Therefore, we will not disturb the circuit court's denial of the Anands' motion for a preliminary injunction pending appeal. *See* Maryland Rule 8-504(a)(6) ("A brief shall . . . include . . . (6) Argument in support of the party's position on each issue.").